TRACOR/MBA *v.* BAPTIST MEDICAL CENTER

CA 89-70                                    780 S.W.2d 26

Court of Appeals of Arkansas
Division II
Opinion delivered November 22, 1989
[Supplemental Opinion on Denial of Rehearing
January 31, 1989.*]

---

*Mayfield, J., concurs.

*Walter A. Murray Law Firm,* for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.,* for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from the Arkansas Workers' Compensation Commission. Appellant, Tracor/MBA, appeals from an order of the full Commission entered October 12, 1988, which affirmed the opinion of the administrative law judge as modified and awarded appellee, Baptist Medical Center, medical expenses totaling $200,932.05. We reverse and remand.

It is undisputed that Sandra Bearden was critically burned in an explosion at appellant's munitions plant on December 19, 1983, and was hospitalized for 124 days thereafter. Appellee submitted a computerized bill to appellant in the amount of $201,490.30 for the care and treatment of Ms. Bearden during her hospitalization. Appellant presented this bill to its insurance company, Northwestern National, who hired Intracorp to per-

form an audit of the charges as was its standard business practice with large medical bills. The audit, performed by employee Iva Moss, indicated that appellee's computerized bill revealed errors resulting in $25,267.47 in reductions leaving a balance due of $176,222.83. Appellee did not perform its own audit but instead accepted Intracorp's audit for insurance purposes.

Appellant paid $138,434.44 of the bill and disputed payment of the amount of reduction reflected in the audit. The case proceeded to a hearing before an administrative law judge on October 9, 1985, who found that appellant should pay a total amount of $176,664.83 of charges on the bill indicating that the audit conducted by Intracorp properly reflected the amount due with one deduction in the amount of $442.00. Appellee appealed this determination to the full Commission which affirmed the administrative law judge's decision as modified and awarded appellee medical expenses in the full amount billed, less $558.25 for a Maalox medication error made by appellee's staff leaving a balance due of $200,932.05. It is from this decision that appellant brings this appeal.

Appellant raises the two points for reversal which are set out below:

## I.

THE FULL COMMISSION'S DECISION AWARDING APPELLEE MEDICAL EXPENSES IN THE AMOUNT OF $200,932.05 IS CONTRARY TO ARK. CODE ANN. § 11-9-517 AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

## II.

THE FULL COMMISSION'S AWARD OF ATTORNEY'S FEES TO THE ATTORNEY FOR THE APPELLEE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND INSTEAD THE FULL COMMISSION SHOULD HAVE AWARDED ATTORNEY'S FEES TO THE ATTORNEY FOR THE APPELLANT.

Under its first point for reversal, appellant argues that

appellee was not entitled to payment for the entire amount of its computerized bill because the audit revealed that over $25,000.00 of charges were undocumented and therefore unreasonable within the parameters of the Workers' Compensation Act, specifically Arkansas Code Annotated Section 11-9-517 (1987). That statute provides as follows:

> The commission is authorized to establish rules and regulations, including schedules of maximum allowable fees for specified medical services rendered with respect to compensable injuries, for the purpose of *controlling the cost* of medical and hospital services and supplies provided pursuant to §§ 11-9-508—11-9-516. [Emphasis supplied.]

Appellant argues that the legislature's purpose in passing the above legislation was to encourage the Commission to *control medical costs*. However, appellant contends that the Commission's decision in the present case reflects its refusal to control costs because it did not require appellee, as the medical provider, to prove that the medical services and supplies in question were reasonable and necessary as required by Arkansas Code Annotated § 11-9-513 (1987) or that they were ever actually provided at all.

We find merit in appellant's argument because we believe there were questions to be decided as to the accuracy and reliability of the computerized bill submitted to appellant and as to whether appellee, Baptist Medical Center, had, in fact, furnished the services and supplies in question to Sandra Bearden. Therefore, the issue presented for decision concerns the degree and nature of proof required from a hospital to sustain its claim for the costs of medicals provided to its patient.

The proof offered by appellee to meet its burden of establishing the reasonableness and necessity of its charges was presented through the computerized bill and the testimony of Ann Schweitzer, nurse in charge of the Intensive Care Unit, and Larry Lazenby, Vice-President of Baptist Medical Center.

Nurse Schweitzer's testimony explained the care and treatment given to Ms. Bearden and how Bearden's account was charged for items and services used in her care. She explained the special procedures to be followed with burn patients to decrease

their exposure to infection by use of sterile gowns, gloves, etc., by all those with whom the patient comes in physical contact. Additionally, clean caps, masks, and booties must be put on each time one enters the patient's room. Schweitzer explained that Bearden was required to use a special Clinitron bed which prevents burn victims from having undue pressure on their skin and bones. She further explained the necessity of sterile Clinitron sheets over the bed. Schweitzer further explained that burns require constant debriding (removal of dead skin) and that the staff used Chux, an unsterile pad, during this procedure to keep the sheet from becoming wet.

Nurse Schweitzer explained that the Intensive Care Unit has a computer terminal at the nurses station from which one can call up a particular patient's name and then order whatever is needed for the care and treatment of that patient. Upon receipt, the ordered items are taken to the patient's room or restocked in the central supply area. She explained that under appellee's standard of care, all medications are required to be documented and that the staff strives to do so 100% of the time; however, perfection is not always achieved because Intensive Care Unit staff members do not always have ample time to make documentation on a patient's chart as to "what is done with the patient and for the patient."

Larry Lazenby explained that appellee, Baptist Medical Center, routinely conducts internal audits to insure the best operational procedures and documentation of records—medical, ordering, purchasing, and outside materials management. He explained that when nurses order any item or drug for a patient on the computer terminal, it automatically prints the order in the receiving department and charges the patient's file.

Appellant presented testimony of Iva Moss who performed the audit of the bill in question. She related that medical record charts should contain all clinical information regarding a patient's treatment and her audit was compiled utilizing all information provided her from appellee. Moss testified regarding the procedure whereby she arrived at the undocumented charges exceeding $25,000.00. To determine the accuracy of the charges and the applicability of all charges on the bill, she stated that she itemized each entry on the bill, its cost, and the amount. Charges

were placed in three categories: those not documented, those not related to the injury, and undercharges. Moss testified that she compared the notations and contents of Ms. Bearden's chart to the charges on her bill and when discrepancies were found, appellee was asked to furnish documentation or adjust the bill in that amount. When Moss found items charted but not billed, she issued appellee credit. Further, she explained that she does not contend that the charges reflected on appellee's computerized bill were exorbitant or unreasonable but that the charges were disallowed because appellee could not or would not present documentation to support the validity of the charges. Moss testified that hospitals are required to chart all medicals received by a patient, therefore, she reduced the bill by amounts reflected on the computerized bill and not charted.

Ms. Moss's reduction of the bill was for undocumented charges for numerous services and medicals, the largest reduction (exceeding $10,000) being for undocumented pharmacy charges comprised, in part, of morphine. Moss also disallowed some charges for discrepancies in documentation for gowns, masks, caps, shoe covers and sterile sheets. Moss questioned the use of three times the number of caps as masks and gowns. Additionally, she disallowed charges for all expenses relating to an incident where a student nurse erroneously gave Ms. Bearden an in- traveneous administration of Maalox. Moss also disallowed other undocumented charges involving lab work, radiology, physical therapy, respiratory therapy, operating room charge, Intensive Care Unit surgery, blood transfusions, and the use of Chux.

After reviewing the testimony and the computerized bill, the full Commission, with one dissent, held that appellee made a prima facie case of reasonableness of its charges and that appellant failed to produce competent and credible evidence to overcome appellee's proof.

The determination of what constitutes reasonable and necessary medical treatment is a fact question for the Commission. *Savage* v. *General Indus.*, 23 Ark. App. 188, 745 S.W.2d 644 (1988). On review, this court must view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the Commission's action. *Allen Canning Co.* v. *McReynolds*, 5 Ark.

App. 78, 632 S.W.2d 450 (1982). This court may not reverse the Commission's decision unless it is convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

Here, the Commission found that "all charges are documented in the form of the electronic record" and with the exception of the Maalox incident, the charges are reasonable and necessary. From our review of the entire record, we cannot conscientiously conclude that fair-minded persons with the same facts before them could reach the conclusion arrived at by the Commission. Accordingly, this case is reversed and remanded. Although we do not pretend to conclude that all charges disallowed by Moss are absolutely correct, we do find unresolved questions regarding accuracy and reliability of the disputed charges. The full Commission carries the unenvied burden of determining the reasonableness and necessity of medical charges in light of its overall duty to control medical costs in Workers' Compensation cases. With those objectives in mind, it is the opinion of this court that there is a higher degree of proof required for proving administration of controlled substances and health services versus supplies.

The best evidence of actual drugs administered to a patient is the handwritten hospital patient chart upon which all medications are required to be logged. This is not only important as evidence of what substances were given to the patient but also a prudent means of protecting the nurse, doctor, and hospital when the standard of care is challenged. Notwithstanding this requirement, here not only did appellee's witness, Nurse Schweitzer, candidly admit that staff members fail to make chart entries for what is done with and for the patient, she was also frank in stating that she could not account for the discrepancies in the varying amounts of caps, gowns, and masks. Mr. Lazenby's testimony revealed that no internal audit was conducted of Ms. Bearden's bill and although he was familiar with Moss's billing summary, he never actually looked at her work sheets to see how she arrived at the disputed amounts. For these reasons, Mr. Lazenby readily admitted that he could neither agree nor disagree with Moss's audit.

At the very least, this evidence reveals the strong possibility that the bill contains charges for medication not given, services not rendered, procedures not performed, and supplies not delivered. The Commission noted that "to cling to antiquated ways" is to fail to recognize that our society is changing from one that deals in paper to one that deals in electronic impulses. In its zeal to abolish "outmoded procedures," the Commission failed to realize that the computer is only as accurate as the person programming it. Furthermore, a hospital's documentation of administered medications is *required* to be logged on a chart in good old-fashioned manual handwriting regardless of the computerized billing procedures utilized by the hospital. We are alarmed by the posture taken by the Commission in this regard. The effect of the Commission's decision will make it virtually impossible to challenge a computerized hospital bill regardless of available evidence challenging the accuracy of the bill.

In rendering its decision, the Commission also found that appellant failed to rebut appellee's proof because Moss was not qualified to make judgment on the bill because she had no special background, education, or training in accounting, auditing, or hospital administration. Regarding Moss's qualifications, the evidence reveals that she has 22 years experience in the practice of nursing and holds a position as manager of the Medical Review Department of Intracorp, a nationwide entity. During the previous two and one-half years with Intracorp, Ms. Moss conducted 500 audits with approximately 100 of that amount conducted on bills submitted by appellee.

Therefore, we cannot say that Moss was not qualified to perform the audit because it is well settled that an expert need only be someone possessing skill or knowledge beyond that of persons of ordinary intelligence. There is no requirement that the witness be the most competent person to testify on those particular items. *See Dildine* v. *Clark Equip. Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984). Based on the foregoing, we do not find that the Commission required appellee hospital to properly account for the charges in question. Therefore, its decision is reversed and the cause remanded for a redetermination of the disputed amounts in a manner consistent with the dictates of this opinion.

Because we are reversing the Commission's award and

remanding the case for a redetermination of the disputed charges, we also reverse its award of attorney fees to appellee based on the difference between the total amount of the computerized bill and sums previously paid by appellant. After the Commission makes a determination on remand of the final amount owed appellee on the questioned charges in the audit, the award of attorney's fees to appellee can be redetermined utilizing the new amounts.

Reversed and remanded.

MAYFIELD, J., agrees.

JENNINGS, J., concurs.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
JANUARY 31, 1990

785 S.W.2d 59

PER CURIAM. Petition for rehearing is denied.

MELVIN MAYFIELD, Judge, concurring. I concur in the court's en banc decision to deny the petition for rehearing filed in the above styled case. *See Tracor/MBA* v. *Baptist Medical Center*, 29 Ark. App. 198, 780 S.W.2d 26 (1989). However, since I was a member of the panel that remanded this case to the Commission, I want to explain why I think the petition for rehearing should be denied.

The basis of the controversy in this case is set out in the opinion of the administrative law judge which states that the appellant's insurance carrier submitted the appellee's bill for hospitalization of appellant's employee to a company that performs hospital bill auditing and that this company simply sought to determine whether the hospital patient actually received the items for which she was charged. The reason for this audit is tacitly recognized by the appellee who explains in its own brief that by a computerized process items are charged to a patient when the item is ordered, and "while it might be said that this system does not show that item was actually *used* by a patient, it clearly does indicate the item was specifically ordered for use on that patient." (Emphasis supplied by appellee.)

The audit disallowed more than $25,000.00 of the hospital's $201,490.30 bill. All but $442.00 of the amount disallowed by the

audit was also disallowed by the law judge who pointed out that most of the items disallowed by the audit were not challenged by the appellee hospital who chose "to rely on their contentions that their computerized billing system was accurate and could not be challenged by the type of audit" performed for the appellant's insurance carrier. The full Commission greatly reduced the amount disallowed by the law judge and allowed all of the appellee's bill except $558.25.

In our opinion of November 22, 1989, we reversed the decision of the Arkansas Workers' Compensation Commission and remanded the matter for a new determination in accordance with our finding that the person who performed the audit was qualified to do so, and for the Commission to allow the appellee an opportunity to present evidence to rebut the findings set out in the audit. I agreed to the reversal and remand because I viewed the issue before us as the same old question of substantial evidence, even though it was presented in a new package. The test is well established. In order to reverse a factual decision of the Commission, we must be convinced that fair-minded men with the same facts before them, could not have arrived at the same conclusion arrived at by the Commission, *Plastics Research & Development Co.* v. *Goodpaster*, 251 Ark. 1029, 476 S.W.2d 242 (1972); and we affirm if reasonable minds could reach the Commission's conclusions, *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). *See also Snow* v. *ALCOA*, 15 Ark. App. 205, 691 S.W.2d 194 (1985).

However, in this case, much of the focus of the Commission was upon the appellee's method of bookkeeping. Each commissioner wrote a separate opinion. One thought the appellant's insurance carrier failed "to recognize that our society is changing from one that deals in paper to one that deals in electronic impulses." A concurring commissioner supported "the idea of auditing hospital bills" but thought there "must be more than simply a challenge of the hospital's record-keeping practices." The third commissioner, however, dissented on the basis that the appellee did not prove "by a preponderance of the evidence that the charges submitted were reasonable and necessary and that the services were in fact provided." Under all the circumstances, I think it was proper to reverse and remand this matter to the Commission to allow it to focus clearly on the factual issues it

must decide.

I would point out that we have noted the fact that the reference in our original opinion to the argument made by appellant concerning Ark. Code Ann. § 11-9-517 (1987) was to a statute enacted after the hospital charges in this case occurred. Had appellee called our attention to the date of the enactment of the statute in its original brief—instead of its petition for rehearing—we probably would not have mentioned the statute in our opinion; however, we also note that appellee claims its charges would have been appropriate even if they were subject to that statute.