Rick GANSKY *v.* HI-TECH ENGINEERING; ITT Hartford

96-335                                    924 S.W.2d 790

Supreme Court of Arkansas
Opinion delivered June 24, 1996

*Lane, Muse, Arman & Pullen*, by: *Donald C. Pullen*, for appellant.

*Anderson & Kilpatrick*, by: *Randy P. Murphy*, for appellees.

ROBERT L. BROWN, Justice. This matter comes to us on review of a decision by the Court of Appeals in which that court was divided by a vote of three to three. *Gansky* v. *Hi-Tech Eng'g*, 52 Ark. App. 147, 916 S.W.2d 124 (1996). Because the vote in the Court of Appeals was evenly split, the decision by the Workers' Compensation Commission to deny additional benefits to appellant Rick Gansky was affirmed. We granted review of the decision of the Court of Appeals pursuant to Ark. Sup. Ct. R. 1-2(f). Gansky now raises two issues to this court on review: (1) the Commission erred in refusing to find a need for continued medical treatment, and (2) the Commission was in error when it decided the issue of temporary total disability before a functional capacity assessment was completed and Gansky was released from a physician's care. We agree that the Commission erred in its decision, and we reverse that decision and remand.

On October 31, 1992, Rick Gansky suffered a work-related injury while working as a machinist for Hi-Tech Engineering (Hi-Tech). It was stipulated by the parties that Hi-Tech accepted the claim and paid medical and disability benefits from the date of the injury until February 22, 1993, after which time Hi-Tech disputed Gansky's need for continued medical treatment.

On December 13, 1993, a hearing was held before the Administrative Law Judge on the issue of additional medical treat-

ment for Gansky. At the time of the hearing, Gansky was thirty-four years old. He testified that he began working for Hi-Tech in June of 1991. He admitted that he had sustained a previous work-related injury to his lower back in February of 1990 while working for another company. As a result of that injury, he received a 5% permanent partial disability rating, and the claim was settled through a joint petition for approximately $4,000. Gansky stated that he did not have any physical problems when he started working for Hi-Tech. According to Hi-Tech's Industrial Injury Reports, Gansky injured his back on March 10, 1992, and missed time from work. Over seven and one-half months later, he experienced the injury that is the subject matter of this claim.

Gansky described the October 31, 1992 injury at Hi-Tech in testimony before the Administrative Law Judge:

> I was lifting parts that weighed about—I'd say anywhere from 150 pounds, maybe 200. They were 15 inch in diameter, solid steel, and I was lifting them and putting them in the lathe. I was doing the same parts all day, and finally my back just gave out, and I ended up with pains going from my shoulders into my neck and down my back and into my legs. At that time I had to quit and Joe had to put my shoes— change my shoes for me so I could go to the hospital.

Gansky stated that a subsequent MRI procedure revealed bulging discs in his lower back. He was referred by Dr. Jeffrey Reinhart to Dr. Allan Gocio, a neurosurgeon, and to Cleveland Smith, a physical therapist. Gansky stated that after his injury, he had been feeling better and that he had tried to go back to work at Hi-Tech several times. In fact, he did return to work on January 12 and 13, 1993, but began to feel pain in his neck and upper back and a tingling sensation in both arms. After a week or two, the pain worsened and, according to Gansky, he had returned to Dr. Gocio. Gansky testified that on Friday, February 19, 1993, before he was to see Dr. Gocio on Monday, February 22, 1993, Hi-Tech told him that he could consider himself laid off. He expected Dr. Gocio to release him on February 22, 1993, but Dr. Gocio recommended the functional capacity assessment instead. Hi-Tech, however, contested the need for continued medical treatment and refused to pay for this evaluation. Gansky testified that he has not seen a physician since that time and that he has not gone back to work. He stated that he has been "[a]t home sitting in a chair watching TV." He testified

that since February 22, 1993, he has had headaches that are caused by his neck pain. He also reported continued lower back pain that is less severe. He added that his neck pain and lower back problems prevented him from either standing or driving an automobile for long periods of time. For example, he stated that he could not raise his arms over his head without pain to his neck. The reason, he testified, that he did not seek further medical treatment was because "workmen's comp quit paying the bills and [he] just [couldn't] afford it. They won't see [him] until the bills are paid." He has taken prescription muscle relaxers, pain medication, and Advil since he last saw Dr. Gocio.

On cross-examination, Gansky admitted that he had been off work "about a year" after his first back injury in 1990. He also admitted that he initially complained of low back problems before complaining of neck problems and headaches. Although he testified that he could not pay for his medical bills, he admitted that he spent a weekend at the theme park, Six Flags, with his girlfriend and children but claimed that his girlfriend paid for the trip. He also admitted that he owns his home, a boat, and a riding lawn mower, and that he is able to do housework and to mow his yard while riding the mower. He stated that he had not been back to work at Hi-Tech because his doctor had not released him.

Under examination by the Administrative Law Judge, Gansky admitted that Dr. Gocio had not refused to treat him. He also advised the judge that he was told that he was being laid off due to a lack of work. It was stipulated that Gansky had an above average work performance record at Hi-Tech.

Also presented at the hearing before the Administrative Law Judge was a letter to the company physician, Dr. Jeffrey Reinhart, from Cleveland Smith, the physical therapist, which was dated January 25, 1993. That letter related that as of January 11, 1993, Gansky's "symptoms have been all but alleviated, except for a minimal amount of soreness in the lumbar region" and that Gansky had gone back to work but returned two days later complaining of cervical spine pain and paresthesia in both upper extremities. The letter concluded: "Symptomatology has reduced during this period of treatments, but continues at a minimal level. Symptoms will increase with activities." On February 25, 1993, Smith wrote Dr. Reinhart that Gansky's symptomatology consisted only of a minimal headache, and after concluding that all physical therapy goals

had been achieved, Gansky was released from further therapy sessions.

At the hearing, it was revealed that Dr. Gocio concluded on January 27, 1993, that Gansky had "cervical and lumbar herniated disc with nerve root compression." A cervical and lumbar myelogram was performed on that same date. The test revealed a normal lumbar myelogram, but Dr. Gocio concluded that a CT scan procedure was needed to better evaluate the cervical spine. That examination showed no evidence of herniation but did show some stenosis. On January 29, 1993, Dr. Gocio ordered continued physical therapy.

According to Dr. Gocio's handwritten progress notes dated February 22, 1993, Gansky was doing better with less pain. However, on that date he wrote to the Levi Work Capacity Center and directed an appointment for Gansky to be evaluated in the functional capacity assessment program. Eight months later, Dr. Gocio wrote to the attorney for Hi-Tech on October 21, 1993, as follows:

> Mr. Rick Gansky was last seen by me on 02-22-93, and at this time the patient was improving significantly from a suspected cervical strain syndrome. Work up did not reveal a significant disc herniation either on MRI scan or myelography and my diagnosis at the time of the patient's last visit was that of a cervical strain which was resolving satisfactorily with medical treatment. The patient was referred to the Levi Work Capacity Center for a functional capacity assessment and return to work if feasible after the functional assessment. This is the last contact that I had with the patient. I must assume that he has resolved his symptomatology or sought care from another physician.
>
> I did not feel that the patient's injury was permanent in nature or that he is likely to have any impairment. I believe that his diagnosis of cervical strain would resolve without significant impairment or long term symptomatology.

In his opinion filed on February 28, 1994, the Administrative Law Judge ordered Hi-Tech to pay Gansky's medical expenses including the cost of the functional capacity assessment and any warranted treatment thereafter. The judge specifically reserved ruling on Gansky's entitlement to temporary total disability benefits, pending further development of the medical evidence.

The Administrative Law Judge's decision was appealed to the Workers' Compensation Commission. In an opinion filed October 17, 1994, the Commission by a vote of two to one, reversed the Administrative Law Judge and determined that Gansky had failed to prove that further medical treatment was reasonable and necessary and that as a result, he was not entitled to temporary total disability benefits. Focusing on the report by the physical therapist, Cleveland Smith, the Commission concluded that Gansky's healing period for the temporary aggravation to his lower back had ended by at least February 22, 1993. The Commission stated:

> Furthermore, we also find that a preponderance of the evidence establishes that the October 31, 1992, injury only temporally aggravated the claimant's preexisting back condition. The physical therapy reports establish that the claimant was essentially symptom free by January 11, 1993. Although he did experience another recurrence of symptoms, the physical therapy reports establish that he was again essentially symptom free by at least February 25, 1993. Also, Dr. Gocio has opined that the claimant's injury was not permanent in nature. While the claimant may continue to need periodic medical treatment due to episodes of back pain related to the degenerative condition, the need for that treatment is not causally related to the compensable injury. Therefore, we find that the claimant failed to prove by preponderance of the evidence that additional medical care is reasonably necessary for treatment of the compensable injury, and we find that the administrative law judge's decision in this regard must be reversed.

The issue now before us is whether the Commission erroneously denied Gansky benefits in the wake of the decision by the Administrative Law Judge to continue medical treatment. This court reviews a workers' compensation case as though it had originally been filed here. Ark. Sup. Ct. R. 1-2 (f); *Kuhn v. Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996); *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994). The issue then is whether medical treatment after February 22, 1993, was reasonable and necessary. Ark. Code Ann. § 11-9-508 (a) (1987). What constitutes reasonable and necessary treatment under this section is a question of fact for the Commission. *Arkansas Dep't of Correction v. Holybee*, 46 Ark. App. 232, 878 S.W.2d 420 (1994); *see also Morgan*

v. *Desha County Tax Assessor's Office*, 45 Ark. App. 95, 871 S.W.2d 429 (1994). The answer to this issue naturally turns on the sufficiency of the evidence.

■■ This court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. *Kuhn v. Majestic Hotel, supra; Plante v. Tyson Foods, Inc., supra; Morgan v. Desha County Tax Assessor's Office, supra.* The Commission's decision will be affirmed unless fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Kuhn v. Majestic Hotel, supra; Plante v. Tyson Foods, Inc., supra; Morgan v. Desha County Tax Assessor's Office, supra; Tracor/MBA v. Baptist Medical Center*, 29 Ark. App. 198, 780 S.W.2d 26 (1989). Credibility of the witnesses is a matter exclusively within the province of the Commission. *See Kuhn v. Majestic Hotel, supra.*

■■ The Commission found that Gansky had temporarily aggravated a pre-existing condition. That is a compensable injury. *See, e.g., Curry v. Franklin Elec.*, 32 Ark. App. 168, 798 S.W.2d 130 (1990). The Commission admitted this in its opinion and order. But then the Commission concludes that the aggravation was over by February 25, 1993, and that Gansky was essentially symptom-free. In doing so, the Commission discounted the fact that Dr. Gocio had ordered a functional capacity assessment for Gansky and had refrained from releasing him from his care until that examination was completed and he could decide whether Gansky could return to work. At that juncture, Hi-Tech intervened and refused to pay for additional medical care, including the functional capacity assessment. Hence, that essential examination ordered by Dr. Gocio was never performed, and a final evaluation by the neurosurgeon was never made. The Commission appears to have concentrated on the reports of the physical therapist as opposed to those of Dr. Gocio. Under these circumstances when the treating neurosurgeon has prescribed a functional capacity assessment and that was not done because Hi-Tech would not pay for it, we cannot agree with the Commission that additional medical treatment was not reasonably necessary or that the healing period had ended. We conclude that fair-minded persons, viewing the same evidence, could not decide otherwise.

Moreover, the record, as the Commission states, does not

reflect that Dr. Gocio opined that Gansky was rid of all symptomatology or ready to return to work. What Dr. Gocio wrote to Hi-Tech's attorneys some eight months after he directed the functional capacity assessment was that he "assumed" the symptomatology had resolved itself because he had had no further contact with Gansky. The neurosurgeon added that he "believed" Gansky's "diagnosis of cervical strain would resolve without significant impairment or long term symptomatology." It is clear from reading Dr. Gocio's letter that his opinion hinged on the results of the functional capacity assessment, which was not performed.

Having resolved the first issue in this manner, resolution of the second issue falls into place. The Administrative Law Judge appropriately delayed deciding whether Gansky had a temporary total disability until all the medical treatment, that is, the functional capacity assessment, was completed. This did not transpire. We do not view the reservation of a decision on this point as running afoul of the Court of Appeals's decision in *Gencorp Polymer Prods.* v. *Landers,* 36 Ark. App. 190, 820 S.W.2d 475 (1991). In *Landers,* that court observed that a claimant should not be permitted a second opportunity to offer proof to meet her burden on the issue of her period of temporary total disability. The Court of Appeals further held that the Workers' Compensation Commission had exceeded its authority in permitting her to do so. Here, Dr. Gocio ordered an additional assessment of Ganksy, and Hi-Tech contested the need for this additional treatment. The result is that Gansky's initial medical treatment and evaluation were never completed. Those circumstances are fundamentally different from the facts which resulted in the *Gencorp* decision.

We, therefore, reverse the Court of Appeals and the Arkansas Workers' Compensation Commission and remand this matter to the Commission with directions (1) to order payment of continued reasonable and necessary medical treatment, including the functional capacity assessment, and (2) to determine whether payment of additional benefits is warranted.

Reversed and remanded.

DUDLEY, J., not participating.

GLAZE and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Justice, dissenting. The majority cor-

rectly states that the standard of review for a decision of the Workers' Compensation Commission is whether the decision is supported by substantial evidence, and a decision of the Commission will be affirmed unless fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Kuhn* v. *Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996). The standard of review further provides that this Court will view the evidence in the light most favorable to the Commission's decision. *Plante* v. *Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994). On appeal, the issue is not whether this Court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the decision must be affirmed. *St. Vincent Infirmary Med. Ctr.* v. *Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996). The Commission is not bound by medical opinion, although it may not arbitrarily disregard the testimony of any witness. *Crow* v. *Weyerhauser Co.*, 46 Ark. App. 295, 880 S.W.2d 320 (1994). The Commission may also examine the basis for a doctor's opinion in deciding the weight to which that opinion is entitled. *Id.*

With this standard in mind, I do not agree that the decision of the Commission should be reversed in this case. The abstract and record reflect that, in addition to the evidence outlined by the majority, at the time Gansky went to work for Hi-Tech in June of 1991, he completed and signed under oath a pre-employment medical history, in which he denied ever having had trouble with his back and further denied that he had ever received Workers' Compensation benefits. However, the record before the Commission reflects that Gansky suffered a back injury on February 14, 1990, while employed, under the name of Rick George, by Advanced Machine Corporation. He was off work about one year and filed a Workers' Compensation claim as a result of this injury; this claim was settled by joint petition on May 17, 1991, less than *one month prior* to his employment with Hi-Tech. At the hearing on the joint petition, Gansky testified that he continued to experience recurrent episodes of back pain. He received a settlement in the sum of $3,815.78 for a 5% permanent impairment at the time of the joint petition. At Gansky's last visit to the physician who treated him for this injury on March 20, 1991, he related that he experienced weekly episodes of back pain, which he claimed to be due to the physical demands of his employment as a machinist, and that this back pain caused him to sometimes miss work. Although Hi-Tech

ultimately abandoned its *Shippers* defense based on Gansky's misrepresentations at the time of his employment, this evidence certainly had bearing on his credibility in the proceedings before the Commission.

More importantly, it is clear from the evidence that Gansky was advised by Hi-Tech on Friday, February 19, 1993, that he was being laid off due to lack of work. Gansky signed the termination report which contained this information. He testified that when he visited Dr. Gocio three days later on Monday, February 22, 1993, he "thought Dr. Gocio would release him to return to work on that day," but the doctor "decided to do a functional capacity evaluation because Hi-Tech told me prior to seeing the doctor, I could consider myself laid off." This testimony, coupled with the report of Gansky's physical therapist, is substantial evidence that Gansky had completed his period of temporary disability and was ready to return to work. The record further reflects that Gansky made no attempt to either return to employment or seek follow-up medical care after his last visit to Dr. Gocio on February 22, 1993. Although he testified that his neck and back continued to hurt, these were essentially the same complaints that he voiced following his injury of February 1990.

I conclude that this Court has chosen to disregard the standard for review of Commission decisions in reversing the Commission in this instance. Here, reasonable minds could clearly have reached the same conclusion as reached by the Commission; I would affirm its decision.

GLAZE, J., joins in this dissent.