Joy BARRETT *v.* ARKANSAS REHABILITATION
SERVICES

CA 83-214                                661 S.W.2d 439

Court of Appeals of Arkansas
Division I
Opinion delivered December 7, 1983

*Odom, Elliott, Lee & Martin,* by: *Mark L. Martin,* for appellant.

*David B. Simmons, E. Diane Graham* and *Jerry G. James,* Public Employee Claims Division, for appellee.

GEORGE K. CRACRAFT, Judge. Joy Barrett appeals from a determination by the Workers' Compensation Commission that she had failed in her burden of proving that her disability due to mental illness arose out of and in the course of her employment with Arkansas Rehabilitation Services. She contends that the decision of the Commission is not supported by substantial evidence, that a contrary conclusion was supported by both the lay and medical evidence, and that the Commission erred in failing to resolve all reasonable doubts in favor of the appellant. We do not agree.

In *Owens* v. *Nat'l Health Laboratories, Inc.,* 8 Ark. App. 92, 648 S.W.2d 829 (1983) we declared the appropriate standard for determining compensability of nontraumatically induced mental illness which is alleged to have resulted from the individual's work. Where psychological injury results from nontraumatically induced events, the worker must show more than the ordinary day to day job stress to which all workers are subjected. We also pointed out that whether the stress was more than ordinary and the psychological injury was causally connected to it or aggravated by it were questions of fact for the Commission to determine.

On appellate review of Workers' Compensation cases the evidence is viewed in the light most favorable to the findings of the Commission and given its strongest probative value in favor of its order. The issue is not whether we might have reached a different result or whether the evidence

would have supported a contrary finding. The extent of our inquiry is to determine if the finding of the Commission is supported by substantial evidence. Even where a preponderance of the evidence might indicate a contrary result we would affirm if reasonable minds could reach the Commission's conclusion. *Bankston* v. *Prime West Corp.*, 271 Ark. 727, 601 S.W.2d 586 (Ark. App. 1981); *Clark* v. *Peabody Testing Service,* 265 Ark. 489, 579 S.W.2d 360 (1970).

The appellant was a forty-four year old woman with a twenty year history of mental illness. She was employed by the appellee as a case worker from the fall of 1980 until the spring of 1982. On several occasions in 1981 and in early 1982 the appellant was hospitalized for physical problems as well as for mental depression. She was terminated from her employment in April 1982 and then filed a claim for workers' compensation benefits contending that she had suffered a compensable mental injury as a result of job stress endured as a case worker for the appellee. She contended that as a case worker she was under tremendous job stress, that her job duties were overwhelming, that she appealed to the supervisors for assistance but received none, that her case load increased so much that she could not keep up with it, and as a direct result of job stress and pressure her previous mental illness was so aggravated as to become disabling. The appellee contended that the illness was not job connected, that any problems appellant had were a result of her longstanding mental illness, and that current problems were nothing more than a continuation of earlier ones.

The appellant testified that her job duties were endless. She was responsible for picking up the patients at the hospital and placing them into training or other rehabilitation programs. In addition she had twenty children with open places in their spines who required monthly care and she had to visit the children's crippled service monthly and "purchase everything from diapers to wheelchairs." She stated that during the first year she had less than fifty clients and that the case load increased thereafter to almost a hundred. She complained about the paper work which required her to fill out from ten to thirty forms per client per month and this required her to work at home for a couple of

hours at night and to make her visits to her clients at night. She stated that she had never had a complaint that she had not provided the proper services.

Her complaints were also aimed at her supervisor. She testified that during the first year he would "cuss at the male counselors" and that she had never worked in a situation where this occurred. She stated that after the first year her supervisor began to criticize her for traveling too much and told her to stay in the office more. She stated that after she stayed in the office he told her she didn't travel enough. She stated that one of the supervisors had handled guns around her and she thought that he was becoming irritated with her and starting to harass her. She stated that on one occasion her supervisors had made her job more difficult by transferring her secretary who had been a great help to her. She stated that there was a great deal of tension between co-employees and that this too was stressful. When her case load increased she had gone to her supervisors for help but had received none. While admitting to family and financial problems, she stated that the job stress was "95 to 97% more stressful than any family or financial stress. I got swamped at work with all the rules and regulations, I received no help, there was constant tension in the office and there was harassment."

There was testimony from her supervisor that her case load did not increase during the period she worked for the rehabilitation service. He testified that her case load was no more than that of twelve other case workers employed by the service and that all other case workers had the same job duties as the appellant. He stated that appellant did complain to him after about a year that she felt her job was more than one person ought to be asked to do. He then tried to assist her in developing methods of doing her job more efficiently. In November of 1981 an assistant was assigned to appellant to get her caught up but this was "because the work had simply not been done, not that the work load was unmanageable." Additionally he had been receiving complaints from appellant's clients that services were not being performed. With regard to the reassignment of the secretary the supervisor testified that this was done at appellant's

request and that he had immediately given her the secretarial replacement she had requested. There was an immediate confict between the new secretary and the appellant and she wanted her former one back; that secretary refused to come back. There was other testimony tending to establish that the allegations of harassment and tension in the office existed only in appellant's mind and this was a manifestation of her illness, rather than a cause of it.

From our review of the lay testimony, of which the recited portion is merely a part, we cannot say that reasonable minds could not conclude that the appellant's job stress was no more than the ordinary stress to which all workers are subjected. Particularly is this apparent when her testimony and that of her co-workers is coupled with the evidence of her other emotional problems which existed during the first year of employment and which she initially told her doctors were causing her mental deterioration. In reviewing this testimony it is significant to note that both the appellant and her supervisors and co-workers testified that during the "first year" of her employment (fall of 1980 to the fall of 1981) she encountered little difficulty with her job duties and that her expression of those difficulties began "after the first year."

Appellant was hospitalized in June of 1981 and on several occasions after that and was seen by a number of doctors. In Dr. Simmons' report he recited that she had a history of depression of varying severity which extended over a period of twenty years, that she had been depressed for most of the past three years, and a few months ago the depression began to increase. He concluded that it was "apparently aggravated significantly by her fifteen year old daughter moving out of her house to the home of her ex-husband. She felt very rejected by this move . . . ." In an exhaustive history recited in Dr. Simmons' report he noted a strong family history of depression. No mention was made in this report of any expression by the appellant of job stress in connection with her depression.

Dr. Simmons referred her to Dr. Glover who recited again the history of her mental problems but stated that she

seemed to have functioned for the past several years without therapy until the last several months where increasing amounts of depressive symptoms occurred. He recited that "a couple of weeks ago when her fifteen year old daughter and she had an argument and her daughter moved out with her father this sort of *finally brought her depression to its full flower.*" Again there was no recitation in the history given the doctor of any job stress or emotional problems resulting from it.

During the period of hospitalization she was also seen by Dr. Howell, whose report also made no mention of job stress. The first mention of her job was contained in Dr. Johnson's report which contained a statement that she "is currently working as a counselor for the rehabilitation services at Hot Springs. She does not find this job *satisfying* either intellectually, emotionally or physically." A report made by Dr. Wanda Stephens in August 1981 also diagnosed her as having severe depressive neurosis but made no mention of appellant's job or any claimed job stress.

The appellant was again hospitalized for several weeks during July of 1981 and the history and discharge summary failed to reveal any claim of job stress although the diagnosis remained the same. The appellant was again hospitalized in January 1982. The report of Dr. Stephens indicated that she had been having difficulty "functioning on the job and had been under a lot of pressure due to *financial difficulties.*" There was no mention of any complaints about job stress. She was hospitalized again in February and again complained of not being able to function on the job but made no mention of job stress. The appellant relies heavily upon the depositions of Dr. Granger, Dr. Wanda Stephens and Dr. Jackson as establishing that the job stress aggravated the mental condition. The testimony of medical experts is an aid to the Commission in its duty to resolve issues of fact. It has a duty to use its experience and expertise in translating that testimony into findings of fact. *Bearden Lumber Co.* v. *Bond,* 7 Ark. App. 65, 644 S.W.2d 322 (1983). We cannot conclude that the Commission did not do so here or that reasonable minds could not conclude from the testimony of these doctors as a whole that they were not using the word

"aggravation" in the legal sense in which our cases impose liability.

Dr. Granger testified that he saw appellant for the first time during the February 1982 hospitalization at which time she stated that she had had problems with depression for over ten years and that on the third occasion he saw her she listed five problem areas that she was concerned about — *bankruptcy, marriage failure, parenting failure* with regard to her own children, friends that had let her down, and *extensive job dissatisfaction.* She had informed him that she was primarily upset about family relationships. With regard to job dissatisfaction, she expressed a distaste for the bureaucratic red tape and conflicts with her supervisor. The doctor stated, however, that from his observations of her he would expect her to have trouble with "interpersonal relationships among her co-workers." He clearly stated that his opinion as to aggravation of the condition was based on having seen her and having obtained the information from her.

Dr. Stephens had stated that the condition was aggravated by her work but she also testified "while I'm not saying her work was strenuous, her condition did cause the work to become strenuous. While it is possible any kind of work would have aggravated Ms. Barrett's problem, her job was demanding. I think, toward the end of the time Ms. Barrett worked, her job did aggravate her condition. Initially I don't think the job caused the symptoms but at the end the working did aggravate her symptoms. Her symptoms were compounded by the stress of her job, her visual problems, any alcohol or drugs she may have been using. Over a period of time her job did aggravate a preexisting condition but it wasn't the cause. The workload toward the end of her job aggravated her condition."

Dr. Jackson's conclusions were also based upon what she had told him as to the conditions under which she worked.

According to the medical reports mentioned herein and others contained in the record during her first three periods of hospitalization appellant was diagnosed has having a

serious mental problem which was considered by the doctors to have resulted from family and financial problems, her physical condition of hypoglycemia and complications resulting from a prior hysterectomy. She apparently did not mention during this period any connection of job stress with her illness. Her only mention of her job was an expression of dissatisfaction with it and the red tape involved. It was not until the hospitalization immediately before her termination that she made mention in her history of job stress. This was subsequent to a time when her illness had developed to such a point that one doctor had described it as a "feeling of inadequacy which caused her to blame her shortcomings and failures on others." The job stress factors to which these doctors used the word "aggravation" were those factors furnished to them by the appellant. There was substantial testimony from lay witnesses that these factors did not in fact exist.

From our review of the record as a whole we cannot say that reasonable minds could not have reached the conclusion reached by the Commission in this case.

Affirmed.

CORBIN and CLONINGER, JJ., agree.