Dixie S. McCLAIN *v.* TEXACO, INC. and Cigna Insurance Company

CA 89-179                                              780 S.W.2d 34

Court of Appeals of Arkansas
Division I
Opinion delivered November 22, 1989
[Rehearing denied January 10, 1990.*]

---

*Rogers, J., not participating.

*Mays & Crutcher, P.A.,* by: *Richard L. Mays,* for appellant.

*Friday, Eldredge & Clark,* by: *James C. Baker, Jr.,* for appellee.

JAMES R. COOPER, Judge. Dixie McClain appeals from a determination by the Workers' Compensation Commission that she had failed in her burden of proving that her disability due to mental illness arose out of and in the course of her employment with Texaco. She first argues that the Commission erred in reversing the administrative law judge's finding that the psychological injury was causally connected to her employment and she contends that the Commission's decision is not supported by substantial evidence. Secondly, she contends that the Commission's reversal of the administrative law judge's opinion amounts to an *ultra vires* use of non-delegable judicial power. We affirm.

When determining the compensability of nontraumatically induced mental illness which is alleged to have resulted from the claimant's work, the claimant must show more than the

ordinary day-to-day stress to which all workers are subjected. *Barrett* v. *Arkansas Rehabilitation Services*, 10 Ark. App. 102, 661 S.W.2d 439 (1983); *Owens* v. *National Health Laboratories, Inc.*, 8 Ark. App. 92, 648 S.W.2d 829 (1983). Whether the stress was more than ordinary and whether the psychological injury was causally connected to it or aggravated by it are questions of fact for the Commission to determine. *Barrett, supra; Owens, supra.*

Although when *Owens, supra*, was decided, the Commission still gave the benefit of the doubt to the claimant in deciding such questions of fact, our standard of review with respect to the factual determinations of the Commission remains unchanged: we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we will affirm if there is any substantial evidence to support the findings made. *Johnson* v. *Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Johnson, supra.* The question for the appellate court is not whether the evidence would have supported findings contrary to the ones made by the Commission, but whether the evidence supports the findings made. *Marrable* v. *Southern LP Gas, Inc.*, 25 Ark. App. 1, 751 S.W.2d 15 (1988).

The record reveals that the appellant went to work for the appellee as the manager of its convenience store located at East Roosevelt and Interstate 30 in Little Rock. She was responsible for hiring employees, ordering gasoline and grocery items, making sure the store was clean and the shelves stocked, making the bank deposits, doing the sales reports and completing various other types of paperwork. The appellant testified that the store was located in a high crime area and because of this fact there was a high turnover of employees. She stated that she often worked sixty-five hours a week and was on call twenty-four hours a day.

She stated that people who were on drugs were constantly in the store and that these persons frequently started fights. Although she had a supervisor, she stated that he was rarely in her

store and that he spent more time at other stores owned by the appellee. When she complained to her supervisor about the working conditions, she was told to "hang on" and was given a one hundred dollar a month raise. She stated that although an assistant manager was supposed to be employed to assist her, the first one quit after a few weeks and another one was not hired until a few weeks before she was terminated.

In November 1986, the appellant began suffering from headaches, nervousness, and irritability. She stated that she also began crying, often uncontrollably, and she sought professional counseling.

The appellant was eventually discharged from Texaco in April 1987 for "borrowing" $500.00 from the night deposit. The appellant admitted that she had taken the money to pay a court fine, which she believed had to be paid in full the next morning. The money was returned early the next day. The appellant was in court on a charge of assaulting a police officer, which arose out of a family dispute.

Medical records reveal that the appellant had a history of depression and suicidal tendencies. She stated that she tried to commit suicide in 1979 after a fight with her boyfriend. She was admitted to the hospital in 1983 after taking an overdose of medication. According to the medical reports, the overdose was related to the recent loss of her job, financial difficulties and the loss of her boyfriend.

The appellant began receiving counseling for her recent problems in the spring of 1987. The reports of Dr. Hope Gibson indicate that the appellant has a very damaged self-esteem secondary to a chaotic childhood and an early marriage. The appellant married at the age of fourteen and divorced when she was twenty-one. Dr. Gibson also indicated that, in June 1987, the appellant was working as a cashier at another convenience store and that this was causing her some stress. In August 1987 the appellant was admitted to Bridgeway Hospital because of a possible suicide attempt. The appellant denied that she had attempted suicide and explained that she had taken medication to help her sleep. She expressed anger at her mother for accusing her of attempting suicide. Apparently the appellant again attempted suicide in 1988.

One medical report indicates that the appellant's depression resulted from stress connected to her employment with Texaco. The report was signed by Dr. Gibson, addressed "To Whom it May Concern," and was dated after this claim was filed, September 27, 1989. The report states, "I believe that the symptoms of anxiety and depression . . . were probably the result of work related stress." The report recommends that the appellant work where "pressures and stress are at a much more reasonable level."

In its opinion, the Commission questions the credibility of the September 27 report because the other evidence overwhelmingly supported a finding that the appellant's problems were not caused by job related stress. This view of the evidence is supported by the record, which shows that other problems related to the appellant's depression were her early marriage and divorce; her inability to bear children; the fact that she and her adopted son have to live with her mother; her anger towards her brothers and sisters because they will not help support her mother; the death of her father when the appellant was three years old; her mother's subsequent marriage to an abusive alcoholic; and her long tempestuous relationship with her boyfriend. The appellant admitted, either at the hearing or in medical reports, that all of these other problems caused her stress. In fact, at the close of the hearing the appellant stated that she was currently doing well. She attributed her improvement, in a large part, to the fact that she was no longer seeing her boyfriend.

We do not agree with the appellant's assertion that Dr. Gibson's report linking the psychological injury to the employment was dismissed by the Commission and should have been given "great weight." The Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. The testimony of medical experts is an aid to the Commission in its duty to resolve issues of fact. It is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted, and when it does so, its findings have the force and effect of a jury verdict. *Marrable* v. *Southern LP Gas, Inc.*, 25 Ark. App. 1, 751 S.W.2d 15 (1988).

The appellant also contends that the Commission erred in applying the test for nontraumatically induced mental illness because it compared the stress of all workers to the appellant's situation. The appellant asserts that her stress should have been compared with that suffered by other Texaco workers. We think that the rule implies that the comparison be made between other employees similarly situated.

In *Pate v. Workmen's Compensation Appeal Board*, 104 Pa. Commw. 481, 522 A.2d 166 (1987), the claimant worked as an electronics assembler, which required her to work with small components and wires. The claimant asserted that her supervisor's repeated rejection of her work exacerbated her pre-existing schizophrenic condition. In rejecting the claimant's argument that her illness was an objective reaction to an abnormal working condition, the Commonwealth Court of Pennsylvania stated:

> Our review of the record discloses no evidence that Pate's working conditions were any different from those of her fellow employees. While we recognize the tedious and painstaking nature of Pate's work task, these factors alone *are not unusual for this type of employment.* Nor does the testimony support a conclusion that it was abnormal or unusual for Pate's supervisors to reject work which did not meet standards. Criticism for improper work is not *per se* abnormal when an employee has a consistently poor work performance.

522 A.2d at 168 (emphasis added). While comparisons to fellow employees may be of some evidentiary value, the ultimate test is whether the stress constitutes an abnormal working condition for that type of employment.

In this case, the stress the appellant suffered should be compared with that suffered by other convenience store managers. However, the appellant has not shown, by any evidence, that the stress she experienced was more than the ordinary day-to-day stress to which other convenience store managers are subjected. The appellant only testified that her supervisor came to her store once a month and the managers at other stores owned by the appellee had more people to help. We cannot say, on this record, that the Commission erred in finding that the appellant did not

suffer undue stress in her employment.

For her second argument the appellant asserts that the Commission did not have subject matter jurisdiction of her claim, and she argues that we should consider this argument because challenges to subject matter jurisdiction may be raised for the first time on appeal. The appellant asserts that Amend. 26 § 5 of the Arkansas Constitution is an exception to the separation of powers doctrine found in Art. 4 § 1 of the Arkansas Constitution. Amendment 26, section 5 provides in part:

> It (the General Assembly) shall have power to provide the means, methods and forum for adjudicating claims arising under said laws, therefore securing payment of the same.

Citing Justice John Fogleman's concurring opinion in *Ward School Bus Manufacturing, Inc.* v. *Fowler*, 261 Ark. 100, 547 S.W.2d 394 (1977), the appellant asserts that the procedure of appearing before an administrative law judge and subsequently being required to appear before the Commission provides two forums and is therefore in violation of the separation of powers doctrine and, she concludes, the Commission is therefore without subject matter jurisdiction to hear these appeals.

We do not agree that the appellant's argument concerns subject matter jurisdiction. The appellant's argument is a constitutional attack on the validity of the legislature's delegation of authority. A court or agency is said to have subject matter jurisdiction of an action if the case is one of the type of cases that the court or agency has been empowered to entertain by the sovereign from which the court or agency derives its authority. *See* R. Casad, *Jurisdiction in Civil Actions*, ¶ 1.01[1] (1983). In Arkansas the legislature has given the Workers' Compensation Commission the authority to determine claims which arise out of employment. *See Brown* v. *Patterson Construction Co.*, 235 Ark. 433, 361 S.W.2d 14 (1962). In the consideration of a claim for compensation for injuries, the jurisdictional question is a very simple one, consisting of only two elements: whether the claimant was an employee, and whether his injuries were sustained in the course of and arose out of his employment. *Welsh* v. *Industrial Commission of Ohio*, 26 N.E.2d 198, 136 Ohio St. 387 (1940). Because the appellant's argument concerns the validity of the legislature's delegation of authority and does not concern subject

matter jurisdiction, her argument cannot be raised for the first time on appeal. *Hill* v. *White-Rodgers*, 10 Ark. App. 402, 665 S.W.2d 292 (1984). Therefore, we will not address the merits of her argument.

Affirmed.

MAYFIELD and JENNINGS, JJ., agree.