UNIVERSITY OF ARKANSAS MEDICAL SCIENCES and Public Employee Claims Division *v.* Phyllis HART

CA 97-600                                                    958 S.W.2d 546

Court of Appeals of Arkansas
Division II
Opinion delivered December 22, 1997

14

*Nathan C. Culp*, for appellants.

*The Whetstone Law Firm, P.A.*, by: *Gary Davis*, for appellee.

D. FRANKLIN AREY, III, Judge. This appeal challenges the Workers' Compensation Commission's determination that the appellee, Phyllis Hart, suffered a compensable injury. Appellants argue that the Commission's finding of a compensable injury is not supported by "objective findings" as required by Ark. Code Ann. § 11-9-102(5)(D) (Repl. 1996). They also argue that the Commission's finding that appellee suffered a compensable injury in the course and scope of her employment is not supported by substantial evidence. We affirm the Commission on both points.

Both issues presented by appellants question whether substantial evidence supports the Commission's finding.

> In reviewing appeals from the Workers' Compensation Commission, we view the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirm that decision when it is supported by substantial evidence. Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. The Commission's decision will be affirmed unless fair-minded persons presented with the same facts could not have arrived at the conclusion reached by the Commission.

*Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 384-85, 944 S.W.2d 524, 526 (1997)(citations omitted); *see City of Blytheville v.*

*McCormick*, 56 Ark. App. 149, 939 S.W.2d 855 (1997). "The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo*." *City of Blytheville*, 56 Ark. App. at 152, 939 S.W.2d at 856.

In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Whaley v. Hardee's*, 51 Ark. App. 166, 912 S.W.2d 14 (1995). The Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*

Appellee was employed as a nursing assistant at UAMS. Her duties included clerical work, answering phones, putting out linens, and making surgical packs. At the hearing before the Administrative Law Judge, she testified that on November 15, 1995, while lifting linens she sustained a back injury causing her to experience pain in her right shoulder, neck, and upper back. There were no witnesses to the injury. She was seen at the emergency room at UAMS on November 15, and she was diagnosed with a back strain. At the time of the injury she was five and one-half months pregnant; because of her pregnancy, extensive diagnostic testing could not be performed.

Appellee was seen by Dr. Teresa Maxwell in a follow-up on November 28. The medical record indicates:

> It was unclear the etiology of her pain [on November 15]. However, it appeared to be more trapezius and upper shoulder tightness.

> She comes in today for follow-up, without any improvements at all.

> On PE today, she is afebrile. Her VS are stable. She still walked and moved her head very slowly. Had problems sitting for any

length of time on the exam table. Said that she did better in a regular chair without support.

However, it was noted on exam that she seemed to have no problems nodding her head "yes" or "no" answering questions, than the effort put forth while trying to test her cranial nerves.

She didn't seem to have any shoulder impingement. And had a lot of pain when the midline spine was palpated from C-3/4 all the way down to the coccyx on palpation.

The December 5, 1995 follow-up examination with Dr. Maxwell revealed the following:

PE today is unchanged. She still complains of pain all the way down the midline spine to palpation as well as in the trapezes and the neck muscles. However, noted when walking in she can turn her head just fine and answer questions.

Dr. Maxwell diagnosed thoraco-lumbar strain.

Appellee was examined by Dr. Derek Lewis on December 22, 1995; she complained of pain in her right arm, shoulder, and back. Dr. Lewis reported that appellee suffered neck and back spasms. An earlier medical report dated December 6, 1995, also notes a diagnosis of positive spasms and lumbar strain.

On January 8, 1996, the appellee was examined by Dr. J.K. Smelz, an assistant professor with UAMS. Dr. Smelz noted in her physical examination that the appellee expressed symptoms of myofascial pain syndrome. Dr. Smelz was unable to determine whether the myofascial pain was secondary to an underlying problem. Due to the pregnancy, X-rays, CT scans, and MRIs could not be performed. However, Dr. Smelz did order a nerve conduction test to be performed, which was within normal limits. In a letter dated March 1, 1996, Dr. Smelz remarked that appellee did have some very mild muscle spasms in her shoulder girdle muscles at the January 8, 1996 examination; these were no longer present during a repeat examination on January 31, 1996.

In an April 22, 1996 letter, Dr. Lewis stated that the appellee presented to his office on December 22, 1995, with complaints of neck, back, shoulder, and arm pain. Dr. Lewis noted that "[u]nfortunately, this patient was pregnant at the time which pre-

vented us from doing any type of X-ray studies which also hampered us from establishing 'objective findings' other than the exam." Dr. Lewis again noted that his examination on that date did reveal back and neck spasms.

The Commission affirmed the decision of the Administrative Law Judge, and adopted her opinion as its own. The ALJ found that appellee sustained a compensable injury caused by a specific incident, "supported by objective findings (muscle spasm). . . ." The ALJ "noted that [the] general practitioner, Dr. Lewis, is the only physician who supports the claimant's position that this minor injury caused debilitating muscle spasm. . . . It is clear that Drs. Maxwell and Hunt felt the claimant's symptoms were out of proportion to her history of injury and clinical examination. . . ."

Appellants first argue that appellee's injury was not supported by objective findings. They contend that the muscle spasms were under her voluntary control, and point to Dr. Lewis's statement that the spasms were "50%" under patient control in support of this contention.

To be compensable, appellee's injury to her back had to be established by medical evidence, supported by "objective findings." Ark. Code Ann. § 11-9-102(5)(A)(i) provides in pertinent part:

(A) "Compensable injury" means:
(i) An accidental injury causing internal or external physical harm to the body. . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence. . . .

Ark. Code Ann. § 11-9-102(5)(D) provides that a compensable injury must be established by medical evidence, supported by "objective findings" as defined in § 11-9-102(16). "Objective findings" are defined as findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i); see Cox v. CFSI Temp. Employment, 57 Ark. App. 310, 944 S.W.2d 856 (1997); Daniel v. Firestone Bldg. Prods., 57 Ark. App. 123, 942 S.W.2d 277 (1997).

Dr. Lewis's examination of appellee revealed back and neck spasms. Appellee cites us to the following definition of "spasm":

> 1. An involuntary muscular contraction. . . . 2. Increased muscular tension and shortness which cannot be released voluntarily and which prevent lengthening of the muscles involved; [spasm] is due to pain stimuli to the lower motor neuron.

*Stedman's Medical Dictionary* 1304 (23d ed. 1976). Dr. Lewis agreed that muscle spasms are out of the voluntary control of the patient, although he did state that "50%" was "objective" and "50%" was under patient control.

■ Substantial evidence supports the determination that appellee's muscle spasms constitute "objective findings" in support of her claim of a compensable injury. Upon examination of appellee, Dr. Lewis observed back and neck spasms. This observation of "[a]n involuntary muscular contraction" or "[i]ncreased muscular tension and shortness which cannot be released voluntarily" constitutes an objective finding. *See Daniel,* 57 Ark. App. at 125, 942 S.W.2d at 278 (finding that a physician's direct observation of a fibrous mass, upon physical examination of the claimant, constitutes an objective finding pursuant to § 11-9-102(16)).

■ While there was medical evidence to the contrary of Dr. Lewis's observation and testimony, the resolution of this conflict was a question of fact for the Commission. Given the substantial nature of Dr. Lewis's testimony, we cannot reverse the Commission's decision to accept Dr. Lewis's testimony. *See City of Blytheville,* 56 Ark. App. at 155, 939 S.W.2d at 858.

Appellants also question whether appellee suffered a compensable injury in the course and scope of her employment. They note inconsistent statements, and that no one witnessed the appellee's accident. They suggest that appellee's testimony is not credible in light of perceived exaggerations and inconsistent statements.

The appellee testified that she had been physically healthy. She testified that she participated in races until she discovered she was pregnant in August of 1995. In September 1995, appellee brought a light duty release from her obstetrician, and her coworkers were told to assist her in lifting. The evidence indicates

that she had complained of leg problems in the past, but had not complained of back, neck, or shoulder pain until the injury in November 1995.

Following her injury, appellee attempted to return to work. She testified that she did not feel that her supervisor was cooperative in providing light duty. Appellee's supervisor, Nina Westbrook, testified that she tried to accommodate appellee in every way, not only for the work-related injury but also because of her pregnancy. Appellee returned to work on December 5, 1995, with a fifteen-pound lifting restriction that was later reduced to five pounds on December 11, 1995, and to two pounds on January 24, 1996. Ms. Westbrook testified that she literally weighed on a scale all of the objects that appellee might have to lift while at work to get an idea of what tasks appellee could perform.

Appellee was a member of the United States Army Reserve; her duties involved paper work associated with the soldiers' physicals and medical records. She testified that she injured her leg in 1991 when she fell down some stairs while stationed in Germany. She was diagnosed with tendonitis and stress fractures in her legs, but an EMG nerve conduction study proved normal. She further testified that after her November 15, 1995, injury she signed in for army duty but got permission to leave because of her injury.

Nicole Bogard testified that she was a captain in the army and was appellee's immediate supervisor. She testified that, to the best of her recollection, appellee was in attendance for the drill conducted on November 18 and 19, 1995. Captain Bogard could not recall exactly what tasks appellee performed that weekend; however, she stated that it was probably administrative work because she was prevented from lifting anything heavy due to her pregnancy. Appellee did not complain to her of any prior physical problems before sustaining the back injury in November 1995. Appellee missed the drill in December, which Captain Bogard assumed was related to her pregnancy. Captain Bogard noted that when she saw her again in January 1996, appellee mentioned her back injury.

The insurance adjuster, Davis Taylor, testified that her decision to deny the claim stemmed from a lack of objective findings

in the medical records, a conflicting statement from appellee that indicated her last Army drill was the weekend of October 27 through the 29, and the conflicting statement from a witness who did not recall that appellee was crying after the work-related injury.

Credibility of the witnesses is a matter exclusively within the province of the Commission. *Gansky v. Hi-Tech Eng'g,* 325 Ark. 163, 924 S.W.2d 790 (1996). Based upon the foregoing testimony, the ALJ determined that appellee suffered a compensable injury arising out of and in the course of her employment. The ALJ noted that "[t]here is no evidence the [appellee] sustained other upper back injuries in the Army." Because a reasonable person could accept this evidence as adequate to support the Commission's decision, we affirm.

Affirmed.

JENNINGS and STROUD, JJ., agree.