Charles D. SMITH *v.* RICELAND FOODS, INC.

CA 97-910                                      965 S.W.2d 794

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered March 25, 1998

*Philip M. Wilson, P.A.*, for appellant.

*David S. Wilson, III*, for appellee.

SAM BIRD, Judge. Charles D. Smith appeals a decision of the Workers' Compensation Commission holding that he had failed to prove by a preponderance of the credible evidence that he injured his back in a compensable fall that occurred on September 20, 1994. Appellant argues the decision is not supported by substantial evidence.

The appellant, a thirty-six-year-old man, was injured when a "man-lift" he was riding broke, and he fell thirty-five to forty feet. At first all he could feel was his legs hurting "real bad," and he couldn't get up. Appellant was immobilized and taken by ambulance to the emergency room at the University of Arkansas Medical Center (UAMS) where it was determined that his only injury was to his right knee. He was hospitalized overnight and sent home the next day in a thigh-to-ankle brace.

Appellant testified that he took physical therapy for several months and throughout that entire time he was telling his doctor, his physical therapist, and Ms. Judy Nelson, a nurse identified in a letter as the case manager for Systemedic Corporation who telephoned him to check on his progress, that he was having pain in his lower back. Dr. J. Michael Gruenwald, an orthopaedist and knee specialist, referred him to Dr. Glen Pait, a neurosurgeon. From x-rays Dr. Pait diagnosed appellant with degenerative disc disease of "obscure etiology." Appellant said after his visit to Dr. Pait nothing more was said or done about his back.

Appellant was released to return to light-duty work on May 25, 1995. Appellee placed him in a small air-conditioned room called a scale room where he weighed incoming and outgoing trucks and dumped the load on incoming trucks by controlling levers in the office.

Appellant recounted that one morning in early June 1995, as he was leaving for work, his porch was wet with dew, his cane slipped, and he fell on his buttocks. The same day he changed scale rooms, and when he started to sit down at the desk in the new room, a shelf on the wall hit him in the upper back. Appellant said he doubled his pain pills and kept on working.

Then, according to appellant, on June 14, 1995, he sat down in a broken chair in one scale room, hit his upper back on the shelf in the other scale room, and his pain became unbearable. He said his back throbbed every time he breathed. He was taken by ambulance to the emergency room at Stuttgart Memorial Hospital. He was admitted and spent seven days in the hospital. He never returned to work.

In September 1995, appellant had arthroscopic surgery on his knee by Dr. James S. Mulhollan of the Arkansas Knee Clinic in Little Rock. After the surgery his knee was better, but he still could not put his full weight on it, and his back was still hurting.

Appellant testified that he and his family physician, Dr. Jerry D. Morgan of Stuttgart, could not accept the diagnosis that he had degenerative "bone" disease, as reported by Dr. Pait, so Dr. Morgan referred him to Dr. F. Richard Jordan, a Little Rock neuro-

logical surgeon. Dr. Jordan did a CT scan but said other diagnostic testing would have to be postponed until appellant lost a great deal of weight.

The medical records show that appellant was treated at the UAMS emergency room on September 20, 1994, for an injury to his right knee secondary to a fall. On October 25, 1994, appellant was again seen at the UAMS emergency room, this time for abdominal pain. March 22, 1995, was the first time back pain was mentioned by Dr. Gruenwald. He reported that appellant was complaining of pain across his right buttock and weakness in his right leg. He thought that appellant might have some nerve impingement and referred appellant to the neurosurgery department for an evaluation. On April 4, 1995, appellant was examined by Dr. Pait, who reported that x-rays showed degenerative disc disease at L4-5 and L5-S1.

On May 22, 1995, Dr. Gruenwald wrote a letter "To Whom It May Concern" stating that appellant was under his treatment for knee and low back pain. In a similar letter dated June 21, 1995, Dr. Gruenwald stated that appellant was suffering from "right patellofemoral syndrome and low back disorder," and that appellant's back condition had been treated for a week at Stuttgart Memorial Hospital. According to counsel for both appellant and appellee, they had made several attempts to get copies of appellant's medical records from Stuttgart Memorial Hospital but neither was successful.

The record also contains a report dated July 27, 1995, of Dr. William F. Hefley in which he says appellant is a new patient who complains of knee pain and a back injury from a fall. Finally, there is a letter from Dr. F. Richard Jordan, a neurological surgeon, to Dr. Jerry Morgan, of Stuttgart, dated July 31, 1995, which describes appellant's fall down the grain shaft and states:

> His major injury was to the right knee and it has not yet recovered. He walks with a cane because of that. The low back pain was noticed at the time of the first injury but the knee pain was so severe as to overwhelm it. However, as the knee has recovered the back seems to have worsened and it has gotten much worse

over the last two months with radiation into the right hip and upper thigh but not any further down the leg . . . .

His CT scan of the lumbar spine shows a transitional vertebra at L5 where there appears to be a facet joint on the left only and above that at the L4–5 level there is a very abnormal facet on the right where it appears that a piece has broken off the lateral aspect of the joint.

. . . .

I believe his back symptoms are from the damaged facet joint. He is too large to investigate further with an MRI and his iodine allergy precludes myelography. For the time being I have simply suggested that he lose 80 pounds.

The administrative law judge held that the evidence "preponderates that [appellant] registered complaints relative to his low back, and attributed same to his compensable injury of September 20, 1994, prior to June 1995." The Commission reversed. In its opinion the Commission delineated certain dates in the medical records that mention appellant complaining of back pain, and concluded that they were too vague, remote, and not supported by objective evidence to support a finding that appellant hurt his back at the time of his fall down the grain shaft.

Appellant argues that the Commission erred in finding that he had failed to prove by a preponderance of the credible evidence that his low back problems were causally related to his fall on September 20, 1994, or that they were a compensable consequence of his compensable knee injury. He points to his own testimony that shortly after he got home from the hospital his back was hurting so bad that he could not even get around with crutches; he required a walker. He also said he mentioned his back pain to Dr. Gruenwald when he went for his first visit, that Dr. Gruenwald said he would refer appellant to a back doctor, but it was a couple of months before he saw Dr. Pait. Appellant described his back pain "like a giant catch." He also contends that Dr. Jordan's finding of a broken bone in his back confirms a traumatic injury.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the

findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979); *Crossett Sch. Dist. v. Gourley*, 50 Ark. App. 1, 899 S.W.2d 482 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996); *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Milligan v. West Tree Serv.*, 57 Ark. App. 14, 941 S.W.2d 434 (1997); *Willmon v. Allen Canning Co.*, 38 Ark. App. 105, 828 S.W.2d 868 (1992). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *St. Vincent Infirmary Med. Ctr. v. Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996); *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

▉ The record shows that appellant was either examined or had tests performed at UAMS on September 27, 1994 (x-rays, right knee); October 25, 1994 (ER); January 11, 1995 (Dr. Gruenwald, knee exam); January 18, 1995 (MRI of right knee); February 1, 1995 (follow-up exam of knee); March 14, 1995 (x-ray, abdomen); and March 22, 1995 (Dr. Gruenwald, note to refer to neurosurgery for back pain evaluation). On none of these dates except the last one is there any mention of appellant complaining of back pain. Furthermore, the lumbar-spine x-rays taken when appellant saw Dr. Pait surely would have shown such severe defects as "a transitional vertebra at L5 where there appears to be a facet joint on the left only and above that at the L4-5 level there is a very abnormal facet on the right where it appears that a piece has broken off the lateral aspect of the joint." Dr. Jordan's letter dated July 31, 1995, does refer to a CT scan, which is objective evidence that by that time there was something severely wrong with appellant's back. However, there is absolutely nothing in the record to connect it to the September 1994 fall. Therefore, we find that the

record contains sufficient evidence to support the decision of the Commission.

Affirmed.

ROBBINS, C.J., ROGERS and MEADS, JJ., agree.

ROAF and CRABTREE, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I respectfully dissent from the majority's opinion because I do not agree that the Commission's finding that Smith did not sustain a compensable back injury is supported by substantial evidence.

Smith, who had worked for appellee since 1988, sustained a compensable knee injury on September 20, 1994. On that date, a man-lift in which he was riding malfunctioned, causing him to fall some thirty-five to forty feet to a concrete floor. Smith was taken to the emergency room where his initial complaints were of pain to his right knee and left thigh. X-rays were taken only of the right knee, right pelvis and left femur. Smith was heavily medicated and placed in an immobilizing hip-to-ankle leg brace on discharge.

Smith's first complaints of low back pain show up in his medical records approximately a month later, in an October 25, 1994, emergency room record. Not insignificantly, he presented at the emergency room that day seeking relief from the side effects of his prescription pain medication. Smith's next recorded complaints of low back pain occurred in March 1995, and continued thereafter until he was ultimately diagnosed with the aid of a CT scan of his lumbar spine on July 31, 1995, as having a damaged (broken) facet joint. Inexplicably, the Commission's opinion refers to this damaged facet joint as a "congenital facet joint problem."

Clearly, Smith's documented complaints of back pain arose soon after his compensable fall, and well before his later fall at home caused by his use of a cane and the two incidents when he hit his back at work, all of which occurred in June 1995. Once again, a long-time employee has been denied compensation for a traumatic injury, in the absence of any evidence that the injury

was not related to a severe fall at work, other than the claimant's delay in voicing his complaints to medical providers. *See Langley v. Danco Constr. Co.*, 57 Ark. App. 295, 944 S.W.2d 142 (1997). Here, unlike in *Langley,* there is no finding by the Commission that Smith is not credible. Because of Smith's very serious fall and his testimony that his back pain originated with the fall but that the knee injury initially overshadowed the back pain, and objective medical evidence that Smith had a broken bone in his back, which the Commission clearly misinterpreted, I would reverse.

CRABTREE, J. joins.