Robert L. FORD, Sr. *v.* CHEMIPULP PROCESS, INC.

CA 98-47                                         977 S.W.2d 5

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered October 28, 1998

*Baim, Gunti, Mouser, DeSimone & Robinson*, by: *William Kirby Mouser*, for appellant.

*Friday, Eldredge & Clark*, by: *William M. Griffin III* and *Betty J. Demory*, for appellee.

MARGARET MEADS, Judge. Appellant, Robert Ford, appeals the decision of the Workers' Compensation Commission, which

reversed the administrative law judge's award of benefits for an allegedly compensable work-related injury. The Commission found that the claimant failed to prove by a preponderance of the evidence that the incident of which he complained caused internal or external physical harm to the body and failed to establish a compensable injury by medical evidence supported by objective findings. On appeal, appellant contends that there is no substantial evidence to support the Commission's findings (1) that he lacked credibility; (2) that he had a preexisting neck problem from his degenerative condition at the time he was injured at work; and (3) that he did not have an acute injury supported by objective findings. We affirm.

Appellant worked as a tile/bricklayer for appellee and traveled around the country working on large industrial projects. On April 29, 1994, while working at the Georgia-Pacific plant in Crossett, Arkansas, appellant contended that he bumped his head on some scaffolding as he exited the chest he was tiling, knocking his hard hat off his head. Appellant did not file an accident report for the incident, but he testified that he told his supervisor that he had "knocked" his hard hat off and "popped" his neck. Appellant completed that job and then completed jobs in Georgia, South Carolina, and North Carolina. After the North Carolina job, which ended approximately the second week of June, appellant returned home complaining of pain in his neck and headaches when he wore his hard hat. He notified the division manager of the pain he was experiencing and asked to be off work for awhile, believing the pain would subside with rest. At that time, appellant applied for and began receiving unemployment benefits.

Appellant did not seek medical attention until June 29, 1994, when he was seen by Dr. David Mattice, an associate of his family practitioner, Dr. Glenn Campbell. At that time, he related to Dr. Mattice a "mild toothache quality pain in the back of his neck." The x-rays taken that day appeared normal. In his record of appellant's August 26, 1994, office visit, Dr. Campbell noted that appellant "had to wear a hard hat recently" and had noticed that his neck was sore when he wore a hard hat during the day. During that visit, Dr. Campbell also noted mild spasm in appellant's

neck area and referred him to a neurosurgeon for further evaluation.

During examinations in September and November of 1994, Dr. Kerry Bernardo, a neurosurgeon, found that appellant had cervical spondylosis and an osteophyte at C6-7, both degenerative changes, which he opined predated the April 1994 incident. He also indicated that examination of appellant's neck revealed palpable cervical and trapezius muscle spasms. Dr. Bernardo prescribed medication and a cervical collar and pillow for appellant's neck spasms, and he ordered appellant to undergo physical therapy for a period of three weeks. After completion of physical therapy, Dr. Bernardo diagnosed ulnar neuropathy in appellant's left hand. An MRI revealed that the osteophyte was impinging upon the thecal sac, and a bone scan verified the degenerative changes in appellant's neck. Dr. Bernardo performed an anterior cervical diskectomy on appellant on November 29, 1994.

■ The standard of review in workers' compensation cases is well settled. On appeal, this court must determine whether there is substantial evidence to support the Commission's decision. *Weaver v. Whitaker Furniture Co.*, 55 Ark. App. 400, 935 S.W.2d 584 (1996). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Id.* The evidence is viewed in the light most favorable to the findings of the Commission and is given its strongest probative value in favor of the Commission's decision. *Barrett v. Arkansas Rehabilitation Servs.*, 10 Ark. App. 102, 661 S.W.2d 439 (1983). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Smith v. Riceland Foods, Inc.*, 61 Ark. App. 132, 965 S.W.2d 794 (1998).

■ A claimant has the burden of proving the compensability of his claim by a preponderance of the evidence. *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998). An accidental injury is caused by a specific incident, identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(5)(A)(i) (Supp. 1997). For an accidental injury to be com-

pensable, the claimant must show that he sustained an accidental injury; that it caused internal or external physical injury to the body; that the injury arose out of and in the course of employment; and that the injury required medical services or resulted in disability or death. *Id.* Additionally, the claimant must establish a compensable injury by medical evidence, supported by objective findings. Ark. Code Ann. § 11-9-102(5)(D). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16). The requirement that a compensable injury be established by medical evidence supported by objective findings applies only to the existence and extent of the injury. *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997).

Appellant first contends that there was not substantial evidence to find that he was not credible. At the hearing, appellant testified that he tried wearing a hard hat around the house to see if he would be able to return to work. In its opinion, the Commission stated, "We simply find no validity in claimant's testimony that he simply wore a hard hat around the house to see if he could." The Commission noted that Dr. Campbell's August 24, 1994, office note reflected that appellant had had to wear a hard hat recently, but there was no further explanation as to why he was required to wear a hard hat during this time. The Commission observed that appellant was drawing unemployment at the time Dr. Campbell noted that he had to wear his hard hat.

■ ■ It is within the Commission's sole discretion to determine the credibility of each witness and the weight to be given to their testimony, *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989), and it is not required to believe or disbelieve the testimony of any witness. *Green v. Jacuzzi Brothers*, 269 Ark. 733, 600 S.W.2d 448 (Ark. App. 1980). The Commission may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Univ. of Ark. Med. Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997). Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987). Although we might have reached a different conclusion concerning appellant's credi-

bility if we were reviewing the case *de novo*, the determination of witness credibility is exclusively within the Commission's province, and we are bound by its decision.

For his second and third points, appellant argues that there is not substantial evidence to support the Commission's findings that he had a preexisting neck problem related to his degenerative condition prior to his injury at work and that there were no objective findings of an acute injury. Appellant contends that the Commission denied benefits because it found that the April 29, 1994, incident was not the major cause of his injury. Although we agree that there is no major-cause requirement for injuries caused by a specific incident, *see Farmland Ins. Co. v. Dubois*, 54 Ark. App.141, 923 S.W.2d 883 (1996), that was not the basis for the denial of appellant's claim. The Commission denied the claim on the determination that there was no medical evidence supported by objective findings to support appellant's contention that he suffered an accidental injury that resulted in internal or external physical harm to the body.

█ During his deposition, Dr. Bernardo stated his belief that the April 1994 incident triggered the symptoms that appellant was experiencing. However, he admitted that during the November 29, 1994, cervical diskectomy, he found severe spondylosis and osteophyte formation, both being preexisting degenerative conditions, but found no frank herniation of a disk and nothing that indicated an acute injury. Because there is no medical evidence supported by objective findings to establish the existence of an injury, appellant has failed to establish a compensable injury.

█ There was objective evidence, namely the presence of the spondylosis and osteophyte, that appellant suffered from degenerative changes. The only other objective evidence in the record concerning appellant's neck complaints was the existence of muscle spasms, first noted in Dr. Campbell's office notes on August 26, 1994. Although the Commission and this court have accepted muscle spasms as objective medical findings, *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998), there was no evidence that connected the muscle spasms to the April 29 incident. The Commission correctly pointed out that the spasms

were first observed almost four months after the April occurrence and after appellant's "mandatory" hard-hat-wearing incident. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Johnson v. Democrat Printing & Lithograph*, 57 Ark. App. 274, 944 S.W.2d 138 (1997). We may reverse the Commission's findings only when we are convinced that fair-minded people with the same facts before them could not have arrived at the conclusion reached by the Commission. *McClain v. Texaco, Inc.,* 29 Ark. App. 218, 780 S.W.2d 34 (1989).

The dissent, citing *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997), states that when a preexisting injury is aggravated by a later compensable injury, compensation is in order. While this is true, the dissent totally ignores the requirement that the aggravation be a "compensable injury." An aggravation, being a new injury with an independent cause, must meet the requirements for a compensable injury. *Farmland Ins. Co. v. DuBois*, *supra*. Because appellant did not meet the requirements for a compensable injury, any aggravation of his preexisting condition is not compensable.

We find that the Commission did not err in finding that appellant failed to prove his case by a preponderance of the evidence with respect to the April 29, 1994, incident, and that there is substantial evidence to support the Commission's denial of benefits.

Affirmed.

AREY, JENNINGS, and CRABTREE, JJ., agree.

BIRD and NEAL, JJ., dissent.

SAM BIRD, Judge, dissenting. I respectfully dissent from the decision of the majority because I think the claimant-appellant in this workers' compensation case was improperly denied benefits for his compensable injury.

Because I think the majority has abbreviated the evidence unduly, I will begin with a more complete recitation of the facts. Appellant was a brick and tile layer. He was very healthy and had

worked for appellee for ten years. He was always on call; he said he lived out of a suitcase, even at home, because the company would call him and he would have to be anywhere in the United States the next day. Appellant had sustained one work-related injury to his low back many years before.

Appellant testified that he normally worked paper mills, industrial chemical plants, and gold mines. He said he built "chests" out of tile that ranged anywhere from four feet wide and twenty feet long to fifty feet wide and one hundred feet long. Some were lined with "acid brick." The chests, for processing chemicals, had tile inside and out, and steel between the tile.

On April 29, 1994, while appellant was working a job at the Georgia-Pacific mill in Crossett, he was climbing out of a "chest" at the end of the day, and struck his head on a piece of scaffolding so hard that it knocked off his hard hat and popped his neck. Several coworkers witnessed the accident, and Michael Crawley, who testified for appellant, stated, "He hit it pretty good because it looked like it stunned him for a little bit." Appellant reported the incident to his supervisor, Mr. Wells, but testified that he also told him he thought everything was going to be okay; he would just have a sore neck for a few days.

Appellant said he continued on the Georgia-Pacific job until it was finished, and, around May 10, he went to Augusta, Georgia, to do a "shut down." He then went to South Carolina and worked on another shut down, and then on to a job in North Carolina. When the last job was finished, he went home to Mississippi. By the time he got home he was having difficulty wearing his hard hat because it was causing pain in his neck and headaches. He said he called the "Southern Division Office," and reported to "the coordinator Mike and Joe Branch the division manager" that the muscles in the back of his neck were getting really tight and he was having headaches. He still thought a few days rest would solve the problem. Finally, about the end of June he went to the doctor.

Appellant testified that he had never had any problem with his neck before he hit the scaffolding with his head. Appellant was very determined to get back to work but, when he tried wearing

his hard hat at home to see if it still caused pain, he could not wear it. Appellant said he drew unemployment until he could no longer certify that he was able to work.

Appellant reported he had made good money working for appellee: $13.50 an hour, plus overtime, holiday pay, and double time. If he "ran" the job, the lowest rate was $16.50 an hour. He said his duties varied from job to job: sometimes he worked with his tools; sometimes he was supervisor. He also said there was a great demand for his skills, and he could get a job immediately if he was able to work. He said that now just riding the lawn mower caused him to have headaches and neck aches. He stated that on a good day he can clean up, cook or wash clothes, but on other days he has to lay down all day.

The medical exhibits reveal that appellant first saw a doctor on June 29, 1994, with a complaint of neck and back pain. The doctor stated that appellant gave a history of suffering an injury three months earlier.

> [He was] wearing a hard hat climbing out of tank when he smashed the top of his head on an over-hand [sic] resulting in a flexion injury to his neck. Since that period of time, he's had mild toothache quality pain in the back of his neck with no radiation except into the superior part of his trapezius muscles bilaterally. This is exacerbated by flexion of his neck.

On September 14, 1994, Dr. Kerry L. Bernardo reported, "There is palpable cervical paraspinous muscle spasm as well as trapezius muscle spasm, greater right than left, limited range of motion due to muscle spasm, particularly on flexion of neck."

Conservative therapy recommended by Dr. Bernardo was unsuccessful and on November 29, 1994, appellant had an anterior cervical diskectomy with resection of an ossified posterior longitudinal ligament and placement of an Allograft bone arthrodesis under microscopic dissection. In an April 1995 letter to appellant, Dr. Bernardo informed him that his insurance carrier would not approve a work-conditioning program.

The administrative law judge found that appellant had sustained a compensable aggravation of a preexisting medical condi-

tion caused by a specific incident identifiable by time and place of occurrence. The Commission reversed and held that appellant had failed to prove (1) that the head injury of April 29, 1994, caused internal physical harm to the body, and (2) that there were objective medical findings establishing the injury. In spite of Dr. Bernardo's testimony that had appellant not banged his head, there would have been no need for surgery, the Commission concluded that the appellant's problems *and his surgery* were the result of degenerative conditions.

Case law provides that an aggravation of a preexisting condition is compensable. The employer "takes the employee as he finds him," and employment circumstances that aggravate preexisting conditions are compensable. *Nashville Livestock Comm'n v. Cox*, 302 Ark. 69, 787 S.W.2d 664 (1990); *Public Employee Claims Div. v. Tiner*, 37 Ark. App. 23, 822 S.W.2d 400 (1992). When a preexisting injury is aggravated by a later compensable injury, compensation is in order. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997).

The Commission placed much emphasis on the fact that one doctor's report stated that appellant had told the doctor that he had "had" to wear a hard hat lately, but during that period of time appellant was not working. Appellant testified that he "tried" to wear a hard hat at home to determine if he could go back to work. By seizing on the words "had to" in the doctor's report, the Commission discounts appellant's credibility and uses this as a basis for denying benefits to appellant. In my view it is far more likely that the doctor misunderstood or misspoke when he reported that appellant told him that he "had" to wear his hard hat.

For the Commission to believe that appellant would report to his doctor that he was forced to wear his hard hat even though not working is absurd. Who could have mandated it, and why would anyone force him to wear a hard hat if he was not working? Simply put, there is absolutely no evidence in the record from which the Commission could conclude that appellant was not credible, and, in my opinion, the Commission was in error in reaching that conclusion.

In its opinion, the Commission also says that "[a]ll medical evidence supports a finding that claimant's pain originated from the degenerative condition and not a result of claimant's specific incident on April 29, 1994." This conclusion is simply not accurate and could be arrived at only by totally ignoring the medical evidence. The Commission may not arbitrarily disregard the physician's opinion, especially when based on objective and measurable findings. *Foxx v. American Transp.*, 54 Ark. App. 115, 924 S.W.2d 814 (1996). Nor is the Commission granted leeway to arbitrarily disregard a witness's testimony. *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998).

It is undisputed that appellant had a preexisting degenerative condition consisting of spondylosis and osteophyte formation. As reflected in appellant's abstract, Dr. Bernardo testified by deposition that:

> Without the injury Mr. Ford may have lived the rest of his life without surgery. Likewise, he may have required surgery without any injury. You ask me if I can say with any reasonable degree of medical certainty that this particular injury forced him to have this surgery, and *I say he had the surgery as a result of the injury.* It did not force him to have it, he didn't have to have it. He could have required surgery later without an injury, but there would have had to [have] been a development of symptoms at sometime for him to have the surgery. His spondylosis and osteophyte formation would not necessarily have developed symptomatology. I can tell you within a reasonable degree of medical certainty osteophyte formation and spondylosis caused the impingement. I corrected the impingement by the surgery.
>
> . . . .
>
> I would say that the major cause of his need for treatment was the injury he sustained in May of 1994. *The major cause was his injury in that if he didn't have the injury he wouldn't have come to see me.* If he didn't have the osteophyte formation it's unlikely the bump on his head would have caused any problems.

(Emphasis added.)

Appellee presented no medical evidence and there is no other medical evidence in the record to contradict the testimony of Dr. Bernardo, so this is not a case where the Commission has exer-

cised its privilege to believe certain medical evidence to the exclusion of other evidence. Instead, the Commission has chosen to simply ignore the only medical evidence presented on the question of what caused appellant's condition. Again, there was no evidence whatsoever that appellant's condition, and the ensuing need for surgery, was the result of anything other than his head-banging incident on April 29, 1994.

While conceding that there was objective medical evidence in the form of muscle spasms relating to appellant's neck complaints, the majority states that "there is no evidence that connected the muscle spasm to the April 29 incident." I disagree. In his September 14, 1994, letter to Dr. Glenn Campbell, Dr. Bernardo noted that appellant had come to him "with complaints of neck and bilateral shoulder pain dating back to an accident suffered at work," and reported that "his pain complaints seem to be related to a cervical strain/sprain type injury." No evidence was presented that contradicted that opinion. Furthermore, as already noted, Dr. Bernardo testified during his deposition that, except for the head-banging incident, appellant's preexisting degenerative condition may have never become symptomatic and surgery may have never been required.

I agree with the majority that an appellant has the burden of proving the compensability of his claim by a preponderance of the evidence. However, I do not believe that the law requires that an appellant, having made such proof, must then go forward with evidence that excludes any possibility that his claim is *not* compensable.

I think the appellant should have been awarded workers' compensation benefits. Therefore, I would reverse and remand.

NEAL, J., joins in this dissent.