Lynn Nelson TEAGUE *v.* C & J CHEMICAL COMPANY

CA 95-1114                                      935 S.W.2d 605

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1996
[Petition for rehearing denied January 22, 1997.]

*James E. "Jeb" Blount* and *H. Oscar Hirby,* for appellant.

*Friday, Eldredge & Clark,* by: *James C. Baker, Jr.,* for appellee.

JOHN MAUZY PITTMAN, Judge. Lynn Nelson Teague appeals from an order of the Arkansas Workers' Compensation Commission denying him additional benefits, except spousal nursing care. Appellant contends that the Commission's decision is not supported by substantial evidence and that appellee is estopped from denying benefits. We find no error and affirm.

Appellant sustained a compensable injury in an automobile accident on June 8, 1985. He contends that he is entitled to additional benefits for total loss of vision, dental problems and aggravation of his preexisting diabetes. Appellant also argues that he is entitled to treatment to his eyes and his feet and for a second cervical surgery. He also contends that he is entitled to benefits for spousal nursing care and reimbursement for home modifications.

Appellant was diagnosed with diabetes in 1971 and has been noncompliant with his treatment plan. Dr. Lawson Glover, an endocrinologist, examined appellant in May 1985 and noted complications attributable to his diabetes, such as vision changes and leg numbness. The Commission found that these complications preexisted the June 1985 accident. Dr. Glover opined that as of August 20, 1986, appellant was no longer suffering from diabetic residual effects from the accident, except for his ophthalmological problems. Dr. Thomas Ward agreed with Dr. Glover's opinion. The Commission found that except for diabetic retinopathies, the medical records did not support the contention that the accident affected appellant's diabetes or caused diabetic complications after August 1986.

Dr. J.J. Magie, an ophthalmologist, testified that in February 1985, appellant had diabetic retinopathies in both eyes, and that he saw appellant in February 1984 for iritis, an inflammation of the iris typically seen in advanced cases of diabetes. Dr. Magie testified that trauma can cause a progression of retinopathy if the trauma creates extra pressure on the eye. The Commission found that there was insufficient evidence of increased eye pressure from the accident. Finally, Dr. Magie testified that failure to comply with recommended treatment of the diabetes would also aggravate the retinopathy. The Commission found that appellant did not follow his treatment plan for diabetes before the accident. The Commission

concluded that there was no causal connection between appellant's retinopathies and vision loss and the accident.

Appellant also contends that his foot problems and ulcerations are due to an aggravation of his diabetes precipitated by the accident. The Commission found that appellant began to experience a loss of sensation in his feet due to peripheral neuropathy prior to the accident and that the earliest indication of foot ulcerations was in September 1988. Dr. Glover stated that residual complications to appellant's diabetes caused by the accident did not continue beyond August 1986. Appellant also attributed the amputation of his right toe, caused by stepping on a nail in December 1990, to his vision loss which he contended was the result of an aggravation of diabetes precipitated by the accident. The Commission found that no causal connection existed and that a contrary finding would be based on speculation. The Commission cited appellant's poor control of his diabetes and neglect of foot care prior to the accident.

Appellant underwent cervical surgery in February 1986 which was attributable to his compensable injury. In 1992, appellant had a subsequent cervical surgery, and Dr. Tom Ward said the surgery was not related to appellant's compensable injuries. The Commission declined to award benefits for the second surgery, finding that there was no causal connection to the compensable injury. The Commission noted that appellant testified that his three-wheeler had rolled over him at least twenty times. Appellant said that in October 1992 he first developed numbness and tingling in his arms.

Appellant also attributes his dental problems to his compensable injuries. Prior to the accident, appellant had undergone dental procedures for dental extractions. Dr. James Flanagin testified that the trauma from the accident "may" have caused appellant's dental problems occurring after the accident. The Commission found that appellant failed to prove that his dental problems were caused by or aggravated by the accident.

As to appellant's hearing loss, Dr. Ward stated that appellant had a preexisting peripheral nerve injury which resulted from appellant's poor control of his diabetes.

Appellant further sought benefits for modifications to his house and benefits for a four-wheeler, a walker, a page magnifier and a hot tub. The Commission declined to award benefits stating that none of the items were recommended by a physician except for

the hot tub and that that recommendation was made after the hot tub was purchased.

■■ The administrative law judge awarded compensation to appellant for his wife's nursing services at the rate of $6.00 per hour. The Commission reversed and held that the services be paid at minimum wage. The abstract is devoid of any evidence concerning the current rate of pay for nursing services, and we decline to speculate as to the rate of pay. Administrative agencies such as the Workers' Compensation Commission are better equipped by specialization, insight and experience to analyze and determine such issues. *P.A.M. Transportation* v. *Miller*, 24 Ark. App. 163, 750 S.W.2d 417 (1988); *Allen Canning Co.* v. *McReynolds*, 5 Ark. App. 78, 632 S.W.2d 450 (1982). Also, in determining a claim, we expect the Commission to utilize expertise, and we do not interfere with the Commission's actions unless we find that it has acted without or in excess of its authority or that its decision is not supported by substantial evidence. *Allen Canning Co.*, *supra*. Although appellant requested that the spousal services be reimbursed at $6.00 an hour, the Commission has the right to believe or disbelieve the testimony of the claimant or any other witness, and may accept and translate into findings of fact only that portion of the testimony that it deems worthy of belief. *McClain* v. *Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989). Thus, we find no error in the Commission's decision to award compensation for nursing services at the minimum-wage rate.

■ Lastly, appellant argues that appellee should have been estopped from denying benefits because it did not provide him with notice using form A-29. Additionally, appellant asserts, without any supporting authority, that appellee had a duty to advise him of all benefits available to him under the workers' compensation laws. Appellant raises these arguments for the first time on appeal; thus, we decline to address them. *Couch* v. *First State Bank*, 49 Ark. App. 102, 898 S.W.2d 57 (1995). Nevertheless, we note that the administrative law judge found that appellant was provided with the A-29 notice.

■ When reviewing decisions from the Workers' Compensation Commission, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision. *Couch* v. *First State Bank*, *supra*. Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. If reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.* We also recognize that it is the Commission's duty to weigh the medical evidence as it does any other evidence, and the resolution of conflicting evidence is a fact question for the Commission. *Nix* v. *Wilson World Hotel*, 46 Ark. App. 303, 879 S.W.2d 457 (1994).

■ From our review of the record, we cannot conclude that the Commission's findings and conclusions are not supported by substantial evidence.

Affirmed.

JENNINGS, C.J., and STROUD, J., agree.

ROBBINS, MAYFIELD, and ROGERS, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. Although I have seen many workers' compensation appeals in which the Commission's decision was supported by much stronger substantial evidence, I agree to affirm this case with one exception. Therefore, I must dissent on that point.

The law judge allowed spousal nursing benefits from September 13, 1985, through December 6, 1985, but the Commission reversed this on the basis that the claim had been withdrawn and the law judge made an award for those benefits anyway. However, the Commission did allow spousal nursing benefits from July 3, 1985, to September 12, 1985, but reduced the hours allowed by the law judge to three hours per day and reduced the $6.00 per hour allowed by the law judge to the "minimum wage." I simply cannot agree to. this parsimonious reduction of the hourly rate.

The Commission's only explanation for this rate was, "Although the care rendered by her required specialized knowledge, it was not overly complicated." The majority opinion in this case affirms for three reasons: (1) the abstract is devoid of any evidence concerning the current rate of pay for nursing services; (2) administrative agencies are better equipped to analyze and determine issues that come before it than we are; and (3) we do not interfere with the Commission's exercise of its expertise unless it exceeded its authority or its decision is not supported by substantial evidence.

In *Plante* v. *Tyson Foods*, 319 Ark. 126, 127-28, 860 S.W.2d 253, 253-54 (1994), the Arkansas Supreme Court said, "before we reverse the commission's decision we must be convinced that fair-minded persons considering the same facts could not have reached the conclusion made by the commission." And in *Morgan* v. *Desha County Tax Assessor's Office*, 45 Ark. App. 95, 96, 871 S.W.2d 429, 429 (1994), the Court of Appeals said:

> However, this standard must not totally insulate the Commission from judicial review and render this Court's function in these cases meaningless. We will reverse a decision of the Commission when we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. (Citations omitted.)

Introduced into evidence in this case was a letter from Dr. John G. Slater, one of the several doctors who attended the appellant. This letter, addressed "To Whom It May Concern," stated:

> Nelson Teague was involved in a motor vehicle accident in June of 1985. He was on the job at the time. He sustained multiple injuries. After his discharge from the hospital, he required nursing care and this was provided by Mrs. Teague who is a licensed dietician but also is very capable of performing many nursing duties.
>
> For his orthopaedic problems, she provided pin site care for the Hoffman device, administration of medications, cast care including windowing of the cast on one occasion, range of motion physical therapy in a hot tub, and ambulation training after cast removal, and bowel management including removal of fecal impactions and administration of enemas as needed. On one occasion, she took a videotape of Mr. Teague's progress and sent this to me so I could be aware of his progress. She also performed a number of functions in the management of Mr. Teague's diabetes mellitus.
>
> As these functions would have had to be performed by a visiting nurse and I expect that the cost of this would have been covered under his workmans' compensation injury, please give consideration to reimbursing Mrs. Teague for the care that she provided for Mr. Nelson Teague.

In addition, appellant's wife testified as to the nursing care she gave the appellant. She said she had a bachelor's degree from the University of Central Arkansas and was presently employed by the Conway Human Development Center. She had worked in Children's Hospital in Little Rock in the field of nutrition and had helped train children to swallow food. As to the care she administered to appellant, which she described in some detail, it included keeping the pin site dry as Dr. Slater had demonstrated for her to do; managing appellant's bowel program, which she said was more than just helping him on and off the toilet, but involved intermittent catheterization of his bladder as well as irrigation of the rectum; managing his nutrition because he was a diabetic and she was a dietitian; plus keeping his bed comfortable; helping the appellant to use a hot tub, at the doctor's instruction, for relief from pain; and helping appellant to use a wheelchair and to take exercise for motion therapy.

While it is true that the appellant did not introduce any evidence as to the "going rate" for nursing services, and neither did the appellee, the appellant's wife submitted a very detailed claim for her services and asked for $6.00 per hour. Nobody testified that this was excessive, or what would be the more appropriate rate. The Commission simply selected the "minimum wage" without saying what it was, or for that matter, without showing that it even knew what that wage was.

Even though appellant's wife is surely an interested party, this court has said that even the testimony of a party "cannot be arbitrarily disregarded, there must be some basis for it." *See Timms* v. *Everett, Director,* 6 Ark. App. 163, 639 S.W.2d 368 (1982). Neither can the Commission arbitrarily disregard a physician's opinion. *Foxx* v. *American Transportation,* 54 Ark. App. 115, 924 S.W.2d 815 (1996).

I cannot explain the reduction of the hourly rate made by the Commission from $6.00 per hour to "minimum wage" — whatever that is. The Commission's explanation for the reduction is almost contradictory within itself — and since the Commission stated that the care rendered by appellant's wife "required specialized knowledge," it would seem to me that the Commission would use the expertise attributed to it by the majority opinion to allow at least the $6.00 per hour claim.

I do not think that fair-minded persons, based on the evidence in this case, could have reached the decision the Commission reached with regard to $6.00 hourly claim for spousal nursing benefits.

Therefore, I dissent and would modify the Commission's award to allow the $6.00 per hour rate.

ROBBINS and ROGERS, JJ., join in this dissent.