Peggy ARNOLD v. TYSON FOODS, INC.

CA 98-616                                    983 S.W.2d 444

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 16, 1998

*Lisle Law Firm, P.C.,* by: *Donnie Rutledge,* for appellant.

*Bassett Law Firm,* by: *Angela M. Doss,* for appellee.

OLLY NEAL, Judge. Appellant, Peggy Arnold, appeals from a decision of the Workers' Compensation Commission finding that she failed to prove by a preponderance of the evidence that her carpal tunnel syndrome was causally connected to her employment with appellee, Tyson Foods, Inc. Appellant argues that the Commission's finding is not supported by substantial evidence. We disagree, and therefore affirm the Commission's decision.

Appellant has continuously worked for appellee since 1978. She worked as a production line worker for several years until she advanced to the position of Cryovac packing superintendent in 1989. Several months before appellant's term as superintendent, a night shift was added that required her to work regularly on the production lines. Appellant testified that, in 1989, she began to notice a tingly or numb feeling in her hands while performing her job of rerunning chickens. This task required her to retrieve a chicken out of the tank filled with ice while grasping it with her left hand. She then used both hands to squeeze the chicken out of a shrunken bag to avoid damage to the chicken.

In 1991, appellant informed the company nurse that her hands were causing her pain. Thereafter, she was given splints to wear. In May of 1996, appellant complained to appellee that she had no feeling in her hands. She sought treatment from Dr. Donald Bailey, who ordered nerve conduction tests when he noticed that appellant was wearing splints. The results of the tests revealed that appellant suffered from moderately severe carpal tunnel syndrome in both wrists, which required surgery. Dr. Peter Heinzelmann, who recommended surgery for appellant, and Dr. Bailey both opined that appellant's injury was work-related.

At a hearing on March 4, 1997, the administrative law judge found that appellant sustained a compensable injury based on objective medical evidence, that her injury was work-related, and

that appellant had proven that she was entitled to temporary total disability for the periods she had not worked after the injury was discovered by Dr. Bailey. The Workers' Compensation Commission reversed the decision of the ALJ, finding that appellant failed to prove her contention that she had worked 75% on the production line during her supervisory position. The Commission further found that because appellant was involved in such activities as racquetball, walleyball, and volleyball after she became superintendent, she failed to meet her burden to show that a causal connection existed between her injury and her employment. From these findings, appellant brings this appeal.

■ When the Workers' Compensation Commission denies a claim because of a claimant's failure to meet her burden of proof, the substantial-evidence standard of review requires that the appellate court affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Roberson v. Waste Management*, 58 Ark. App. 11, 944 S.W.2d 858 (1997). Substantial evidence is that relevant evidence which reasonable minds might accept as adequate to support a conclusion. *Id.* The appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirms that decision if it is supported by substantial evidence. *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo*. *University of Ark. Med. Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997).

■ In this case, appellant argues that the Arkansas Supreme Court decision in *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998), is controlling. She contends that it is unnecessary for her to prove that her carpal tunnel syndrome involves rapidity and repetition and that the Commission erroneously focused on the percentage of time she worked on the production line as a superintendent. Although this statement of the Arkansas law is correct, we note that both the pre-Act 796 and

Act 796 law require the claimant to prove that her injury arose "out of and in the course of employment." Ark. Code Ann. § 11-9-401(a)(1) (1987 and Repl. 1996). Even though it is virtually undisputed that appellant suffers from carpal tunnel syndrome, she still bears the burden of proof by a preponderance of the evidence that her injury occurred from her employment with appellee, and not from any other source.

█ The evidence presented by appellant in this case showed that she began to notice problems with her hands in 1989. Shortly after, she received splints to wear from the company nurse. However, from 1989 to 1996, appellant made several visits to her personal physician without once mentioning that she was having problems with her hands. Appellant testified that when she received splints from the company nurse, she did not express to any on-staff medical personnel that the pain in her wrists and hands were work-related. Moreover, while appellant argues that the Commission failed to mention the medical evidence that concluded that her injury was causally connected to her workplace, we note that the Commission took into account that in 1996, appellant was initially seen by Dr. Bailey for a wholly unrelated problem than her hand problem. Further, appellant's testimony does not reveal that she told Dr. Bailey or any of her other treating physicians that her injury was work-related. It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). The Commission has the duty to use its experience and expertise in translating evidence of medical experts into findings of fact. *Id.*

The Commission noted several facts in finding that the evidence failed to prove that appellant's injury was causally related to her workplace. First, two supervisors who worked directly under the supervision of appellant testified that appellant worked no more than thirty minutes at a time on the production line. Second, the Commission stated that appellant's injury could be causally related to the sporting activities she maintained during the time she worked for appellee. There was testimony by Billy Joyce Reed, the complex personnel manager, who testified that she

would estimate that she and appellant played volleyball, racquetball, and walleyball a "hundred times." Glenda Kirk, the company nurse, testified that when appellant came to her office in 1991, appellant stated that her hands were hurting and that she would have to stop playing volleyball and racquetball. Finally, appellant was a superintendent during the time that she first noticed a problem with her hands. There was evidence that the responsibilities of a superintendent included training supervisors in production and administration of policies and regulations, monitoring safety and ergonomics, and working with the new-hire training program. Yet, the record indicates that appellant never told anyone that her injury was work-related, despite the fact that her position required her to maintain safety regulations and to report any work-related injuries.

■  We have stated on many occasions that the determination of the credibility and weight to be given a witness's testimony is within the sole province of the Workers' Compensation Commission. *American Greetings Corp. v. Garey*, 61 Ark. App. 18, 963 S.W.2d 613 (1998); *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996). The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997).

■  Based on the foregoing reasons, we find that substantial evidence exists to support the Commission's finding that appellant failed to prove by a preponderance of the evidence that the carpal tunnel syndrome she sustained was causally related to her employment with appellee.

Affirmed.

PITTMAN, AREY, BIRD, and GRIFFEN, JJ., agree.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and remand because I believe that the Commis-

sion's decision that Ms. Arnold had not met her burden of proof as to the causal connection between her carpal tunnel injury is not supported by substantial evidence. The concluding paragraph of the decision is entirely speculative, and is not supported by any evidence, medical or otherwise. The conclusion, "If claimant's carpal tunnel syndrome were related to her job with respondent, *one would expect* the symptoms to develop at a time when the claimant was actually performing the *majority* of her work on a production assembly line . . ." is unfounded, contradicts the medical opinions given by two physicians, and strongly suggests that the Commission's decision was based on conjecture. (Emphasis added.)

The evidence clearly establishes that Ms. Arnold worked for Tyson Foods for a number of years, commencing in 1967 and continuously after 1978, and that she first worked on the production line and continued to do so even after she became a supervisor, working 8 or 9 months on the lines in 1989, and filling in as needed thereafter. Although she played racquet sports, by even Tyson Foods' account she reported symptoms in *both* wrists in 1991 and was provided splints for *both* wrists by Tyson Foods at that time. Although the evidence is in conflict as to how much time she actually spent on the line after 1989, two of the Tyson Foods' own witnesses, s supervisory personnel, even acknowledged that supervisors did work on the line "30 minutes at a time . . . a couple of times a night, three or four times a week on average," and for an "hour at a time." It is thus uncontradicted that Arnold continued to regularly work on the line throughout her tenure with Tyson Foods.

The Commission concluded that there was *no causation whatsoever*, and thereby specifically avoided the question of whether the injury was to be governed by Act 796, and thus whether the requirement of "major cause" needed to be met. The Commission opined, again without support in the record, "The hand grip required to play racquetball and the jarring force on both hands and wrists when playing these sports are just as likely as claimant's

occasional work on the line to be the cause of claimant's condition."

To the extent that this is a finding upon which the Commission's decision is based, there is not one scintilla of evidence in the record to support it. This court has often said that administrative agencies, such as the Workers' Compensation Commission, are better equipped by specialization, insight, and experiences to analyze and determine the issues that come before them, such as the appropriate rate of pay for nursing services, *see Teague v. C & J Chem. Co.*, 55 Ark. App. 335, 935 S.W.2d 605 (1996), and whether a claimant made a false statement about his physical condition on an employment application, *see DeFrancisco v. Arkansas Kraft Corp.*, 5 Ark. App. 195, 636 S.W.2d 291 (1982). However, I cannot find where we have ever found that the Commission possessed the expertise to reach this kind of scientific conclusion without medical evidence or other relevant expert testimony.

Of course, the majority opinion finds that Arnold's failure to timely report the injury or to raise it to any of the physicians she saw between 1991 and 1996 is evidence that causation is absent. However, we do not conduct a *de novo* review of Workers' Compensation cases, and the Commission made other, significant, findings without any support in the record. Moreover, the evidence clearly establishes that Arnold first experienced symptoms no later than 1991 when she was issued *bilateral* splints by her employer. Her carpal tunnel syndrome was not *diagnosed* until 1996, after which she timely made her claim. And, the Commission disregarded the only objective evidence before it as to causation, the evidence provided by two physicians. Even more troubling, it came up with its own scenario regarding the etiology and mechanics of Arnold's injury without any medical or other expert evidence in the record to support its conclusions. I would therefore reverse and remand for further proceedings to determine whether the injury is governed by Act 796, and to resolve the issue of compensability accordingly.