HORTICARE LANDSCAPE MANAGEMENT;
Mid-Century Insurance Company; Farmers Insurance Company *v.*
Jerome McDONALD

CA 02-103                                          89 S.W.3d 375

Court of Appeals of Arkansas
Division IV
Opinion delivered November 20, 2002

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Carol Lockard Worley* and *Julia L. Busfield*, for appellants.

*Kenneth A. Olsen*, for appellee.

K AREN R. BAKER, Judge. Appellant, Horticare Landscape Management, employed appellee, Jerome McDon-

ald, to perform physical labor related to landscape work. His duties included stacking rocks, planting trees, building beds, and any other assigned tasks. On June 30, 1999, appellee was landscaping at a plaza on Chenal Parkway. Appellant had ten to twelve employees working on the project that day. Appellee was performing dirt work, which included operating a bobcat front end loader and loading dirt onto a dump truck. The dirt was being dumped into an area on the plaza for leveling. The truck bed would be raised to allow the dirt to slide out the back of the truck and be dumped onto the ground. At about 10:00 a.m., appellee approached the side of the truck with the bed raised to make sure that the dirt was being emptied properly. The door of the truck hit him under his right arm, slid down his ribs and bounced off his right hip. Appellee landed on his left side, striking the ground from his left hip downward. He stated that the pain was so overwhelming that he was unable to answer a coworker's initial inquiries as to whether he was okay.

Appellee's immediate supervisor drove him to appellant's designated medical provider, St. Vincent's Family Clinic. After receiving medical treatment for his right rib area, appellee was furnished medicine and directed to remain off work until July 2, 1999. He contacted appellant prior to his scheduled release to return to work and requested permission to remain off work until the Fourth of July holiday, and subsequently returned to work on July 7.

Appellee then worked for appellant for approximately two more weeks, discharging his regular employment duties. The basis for the termination of appellee's employment on July 21 did not relate to the June 30 incident. After leaving appellant's employ, appellee worked for approximately three months for a tree landscaping business. Appellee testified that he sustained no injury while employed there.

Appellee next secured employment with Midwest Dry Wall where he performed the duties of a metal stud framer and sheet rock hanger working up to seventy hours a week. In mid-December, 1999, appellee began experiencing pain in his left hip area. He described the onset of his symptoms as beginning as a

dull ache and gradually increasing until the pain became unbearable. While he was able to continue his job duties for a period of time, performance of those duties became increasingly difficult as a result of his left leg pain, even with the constant use of over-the-counter pain relievers. Eventually, Dr. Charles Clark, a Pine Bluff orthopedic physician, began treating appellee.

While under Dr. Clark's care, appellee underwent additional diagnostic studies, including an MRI of his left hip. The MRI disclosed a herniated disc and an avascular necrosis Grade I in appellee's left leg and hip. Appellee was referred to Dr. Simpson, a neurosurgeon, who referred him back to Dr. Clark for treatment of the left hip. Although appellee continued to attempt to work after beginning treatment with Dr. Clark on January 25, 2000, he became unable to stand for prolonged periods or to climb ladders. Because of his inability to perform required job activitities, including climbing, Midwest Dry Wall terminated his employment in February 2000. Appellee sought employment which did not involve standing or climbing. The final medical report in the record by Dr. Clark on September 7, 2000, indicates that the avascular necrosis of appellee's left hip was at a Grade IV. Dr. Clark recommended a total hip replacement.

Testimony indicated that the only fall or blow to appellee's left hip occurred on June 30, 1999, when he fell after being struck by the door while employed by appellant. He has undergone treatment under the care of Dr. Clark for the diagnosed avascular necrosis of the left hip. Dr. Clark associated the June 30, 1999, injury with the condition of the left hip in various correspondence as follows:

> After today's visit of May 9, 2000, Mr. McDonald noted that he needed clarification on the etiology of his AVN. We have addressed this question before, and the most likely source of his disease is trauma. The only trauma that he can relate, that is associated with this, was work related.
>
> . . .
>
> The only history that he gives that is cogent, seems to be related to trauma. Most likely at that time, it would have felt like a con-

tusion that initially would have resolved, and then his pain would have progressed after that, in an insidious fashion.

Since there are no other risk factors that seem applicable at this point in time, I would say that the most likely cause, therefore, is trauma.

. . .

[I]t is my feeling that Mr. McDonald was probably able to work up until the time the hip pain became debilitating, which was about a month prior to his seeing me. My guess would have been that it would have been four to five months before this became as symptomatic as it did, and this would be typical for avascular necrosis. . . . The avascular necrosis has now advanced to Grade III and IV changes. The need for a total hip, I think, is imminent at this point in time. I went so far as to recommend that we do this in August of this year, due to the persistent pain. However, multiple problems with worker's compensation have delayed treatment to date.

The Commission found that the injury was compensable and that the June 30, 1999, incident was the cause of the injury.

Appellant argues that there is no substantial evidence to support the Commission's finding that appellee's avascular necrosis of the hip was a compensable consequence of his bruised right rib six months earlier. Appellant's argument inaccurately characterizes the injury as arising out of appellee's injury to the rib. That is not the case. The Commission found that the injury to the hip arose out of the same incident that caused the rib injury, not that the hip injury was a direct result of the rib injury.

Our question then becomes whether substantial evidence supports the Commission's decision that appellant sustained a compensable injury to his left hip as a result of the June 30, 1999, incident. We hold that substantial evidence supports that conclusion.

■ When reviewing a decision of the Arkansas Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark v. Peabody Testing Serv.,*

265 Ark. 489, 579 S.W.2d 360 (1979). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Crossett Sch. Dist. v. Fulton*, 65 Ark. App. 63, 984 S.W.2d 833 (1999). The issue is not whether this court might have reached a different result from the Commission. *Malone v. Texarkana Pub. Schs.*, 333 Ark. 343, 969 S.W.2d 644 (1998). If reasonable minds could reach the result found by the Commission, we must affirm the decision. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995).

■■ In making our review, we recognize that it is the function of the Commission to determine credibility of witnesses and the weight to be given their testimony. *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997). In order to prove a compensable injury a claimant must prove, among other things, a causal relationship between the injury and the employment. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997). Objective medical evidence is necessary to establish the existence and extent of an injury but not essential to establish the causal relationship between the injury and a work-related accident. *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999). Objective medical evidence is not essential to establish the causal relationship between the injury and a work-related accident where objective medical evidence establishes the existence and extent of the injury, and a preponderance of other nonmedical evidence establishes a causal relation to a work-related incident. *Wal-Mart Stores, Inc. v. Van Wagner, supra; Wal-Mart Stores, Inc. v. Leach,* ·74 Ark. App. 231, 48 S.W.3d 540 (2001).

■■ In this case, Dr. Clark's medical evidence clearly establishes the existence of an injury that was becoming progressively worse with a delay of medical treatment caused by problems with payments by the workers' compensation carrier. As we emphasized in *Stephens Truck Lines v. Millican, supra,* to require objective medical findings to prove non-medical elements of compensability would defeat the overriding legislative intent, which is to pay timely benefits to all legitimately injured workers. Dr. Clark clearly stated his belief that the June 30 incident was the cause of the condition, and other testimony established unquestionably that appellee was struck, fell, and received initial treat-

ment for the rib injury. Dr. Clark specifically acknowledged that a delay of symptoms, followed by a steady degeneration of appellee's condition, was consistent with his diagnosis.

Under these circumstances, sufficient evidence supports the Commission's finding, and we accordingly affirm.

ROBBINS and VAUGHT, JJ., agree.