2011 Ark. App. 715
**James KELLEY, Appellant**

v.

**COURTYARD MARRIOTT and Travelers Insurance Company, Appellees.**

**No. CA 11–533.**

Court of Appeals of Arkansas.

Nov. 16, 2011.

Eddie H. Walker, Jr., Fort Smith, for appellant.

James A. Arnold, II and Rebecca Dawn Hattabaugh, Fort Smith, for appellee.

WAYMOND M. BROWN, Judge.

James Kelley appeals from a February 8, 2011 ruling by the Workers' Compensation Commission that he failed to prove a compensable left knee injury and that the total knee replacement recommended by his physician was not reasonable and necessary. Because the Commission's decision was supported by substantial evidence, we affirm.

*Factual and Procedural Background*

Appellant James Kelley was hired by Courtyard Marriott as a maintenance man around March of 2008. He testified that, while at work on April 12, 2009 (which fell on a weekend), the hotel manager asked him to retrieve a gas can that had been left on the parking lot. In the course of performing that errand, he twisted his foot and heard his left knee pop. He testified that his knee immediately began throbbing and that as he continued working, his leg swelled and he began to limp. At that time, he went to the front desk and reported his injury to the night clerk. The hotel manager was contacted and sent Kelley to the emergency room at St. Edwards Hospital in Fort Smith for treatment. The ER record reflects that he reported "ten" on a zero-to-ten scale for pain and was placed in a knee immobilizer. The physician who examined him diagnosed him with left-knee sprain and possible meniscal injury and noted that there was mild joint effusion, no swelling, and no limited range of motion, but pain with flexion. X-rays taken at that time were interpreted by the radiologist as showing mild medial joint-space narrowing and possible mild swelling of the soft tissue anterior to the lower patella, but no fracture or joint effusion.

Kelley was next seen on April 30, 2009, by Dr. Robert Williams, his family physician, who diagnosed him with a sprained left knee and referred him to Dr. Edward Rhomberg for an orthopedic evaluation. Kelley first saw Dr. Rhomberg on May 8, 2009. Dr. Rhomberg noted a chief complaint of left-knee pain and diagnosed Kelley with degenerative joint disease of the left knee, recommended glucosamine and over-the-counter anti-inflammatories, and gave Kelley a corticosteroid injection. Dr. Rhomberg saw Kelley several times over the following months for continuing left-knee pain and recommended that Kelley undergo a total knee replacement to relieve his pain. Dr. Rhomberg also placed Kelley on light duty and instructed him to limit his work to sedentary, sit-down activities.

Kelley had a history of problems with his left knee starting in 1984, when he was injured in a motorcycle accident and fractured his patella. As a result of that injury, he underwent two surgeries on his left knee in 1985.[1] The medical records also show that in March 2007, Kelley sought medical treatment from Dr. Keith Bolyard, an orthopedic surgeon, after he experienced pain and difficulties with his left knee for several weeks. Dr. Bolyard twice drained fluid from the knee in 2007 or 2008. The evidence was that from then until the April 12, 2009 incident, Kelley did not complain of or seek treatment for knee problems, and was able to perform physically strenuous work duties.

At the request of appellees, Dr. Theodore Hronas, a radiologist, reviewed x-rays

---

1. No medical records from this injury or the surgeries related to it were entered into the record.

and an MRI of Kelley's left knee taken in March 2007, when he was treated by Dr. Bolyard, and x-rays from April and May 2009, following the incident at Courtyard Marriott. In a report dated October 5, 2009, Dr. Hronas stated that in his opinion, to a reasonable degree of medical certainty, all of the films showed degenerative changes and a small joint effusion, but did not show that the condition of Kelley's knee had changed or worsened over the time period between the films. Dr. Hronas further stated, "There is a report of an injury on 4/12/09, but there are no radiographic manifestations to suggest any acute injury or interval change from the studies in 2007."

Dr. Rhomberg gave a deposition on March 12, 2010, concerning his treatment of Kelley. When asked if the April 12, 2009 incident was significant in light of the patellar fracture of 1984, Dr. Rhomberg stated, "There was nothing in my initial examination to suggest to me that there had been some new exacerbation of whatever underlying condition he might have had, something that was new." Dr. Rhomberg testified that the joint effusion noted in the ER record of April 12, 2009 could be the sign of an acute problem or could be a manifestation of a chronic problem, but he could not state with a reasonable degree of medical certainty which was the cause of Kelley's symptoms following the April 12, 2009 work-related incident. Dr. Rhomberg also said that it was just as reasonable to conclude that Kelley had a stable joint effusion caused by a chronic degenerative condition that required him to seek emergency treatment because of pain, as it was to conclude that such joint effusion pain and the need to seek emergency treatment were caused by the April 12, 2009 incident.

Dr. Rhomberg testified that the main criteria for recommending total knee replacement surgery is the presence of pain that unacceptably interferes with the patient's life. He stated that regardless of Kelley's chronic knee problems, he would not have been treating him if the condition were not actively symptomatic. At the time of his deposition on March 12, 2010, Dr. Rhomberg stated that it would still be appropriate for Kelley to be on light duty, since the total knee replacement had not been performed.

In terms of the effect of his condition on his ability to work, the evidence was that Kelley was given light-duty work by appellees for a brief period of time but was unable to perform the sedentary duties he was given and was eventually sent home until he got his knee fixed. At a hearing before an administrative law judge (ALJ) on April 20, 2010, Kelley testified that he still had to wear a full-length leg brace and was unable to work because he "cannot stand on [his] leg all day or bend and squat without [his] foot and leg swelling tremendously." [2]

The ALJ determined that Kelley had sustained a compensable injury to his left knee in the form of an aggravation of a pre-existing condition and that the recommended additional treatment was reasonable and necessary. The Commission reversed the ALJ's decision and dismissed Kelley's claim in its entirety, finding that he had failed to prove by a preponderance of the evidence that he sustained a compensable injury in the form of an aggravation of a pre-existing condition or that the total knee replacement recommended by Dr. Rhomberg was reasonable and necessary.

2. The record does not contain any functional capacity evaluation or independent medical evaluation addressing Kelley's ability to perform work duties following the April 12, 2009 incident.

## Standard of Review

 This court will not reverse the Commission's decision unless it is convinced that no fair-minded person with the same facts could have reached the conclusions arrived at by the Commission.[3] We view the evidence and reasonable inferences deducible therefrom in a light most favorable to the Commission's decision,[4] and we must affirm if the Commission's decision is supported by substantial evidence.[5] Substantial evidence is that relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[6] The question |₆presented to this court is not whether the evidence would support findings contrary to those made by the Commission, but whether evidence supports the findings made by the Commission.[7] Even if the decision of the Commission is against the preponderance of the evidence, this court will not reverse where the Commission's decision is supported by substantial evidence.[8]

## Discussion

 The issue in this case is whether the claimant sustained a compensable injury. Arkansas Code Annotated section 11–9–102(4)(A)(i)(Supp.2009) defines a compensable injury as

[a]n accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.

A compensable injury must be established by medical evidence supported by objective findings.[9] Objective findings are "those findings which cannot come under the voluntary control of the patient."[10] Medical opinions addressing compensability must be stated within a reasonable degree of medical certainty.[11] The claimant must also prove by a preponderance of the evidence that there is a causal relationship between the employment and the claimed |₇injury.[12] However, objective medical evidence, while necessary to establish the existence and extent of an injury, is not necessary to establish a causal relationship between the injury and the work-related accident.[13]

 An employer takes an employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable.[14] An aggravation of a preexisting non-compensable condition by a compensable injury is itself compensable.[15] However, an aggravation, being a

3. *Dorris v. Townsends of Ark.*, 93 Ark.App. 208, 218 S.W.3d 351 (2005).

4. *Geo Specialty Chem. v. Clingan*, 69 Ark.App. 369, 13 S.W.3d 218 (2000).

5. *Ward v. Hickory Springs Mfg. Co.*, 97 Ark. App. 311, 248 S.W.3d 482 (2007).

6. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001).

7. *Snow v. Alcoa*, 15 Ark.App. 205, 691 S.W.2d 194 (1985).

8. *Id.*

9. Ark.Code Ann. § 11–9–102(4)(D).

10. Ark.Code Ann. § 11–9–102(16)(A)(i).

11. Ark.Code Ann. § 11–9–102(16)(B).

12. *Crawford v. Single Source Transp.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004); *Horticare Landscape Mgmt. v. McDonald*, 80 Ark.App. 45, 89 S.W.3d 375 (2002).

13. *Wal–Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999).

14. *Heritage Baptist Temple v. Robison*, 82 Ark. App. 460, 120 S.W.3d 150 (2003).

15. *Oliver v. Guardsmark*, 68 Ark.App. 24, 3 S.W.3d 336 (1999).

new injury with an independent cause, must meet the same requirements as other compensable injuries.[16]

■ It is within the Commission's province to weigh all the medical evidence and determine what is most credible.[17] The Commission is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief.[18]

■ In support of its decision in this case, the Commission cited a lack of radiographical |₈proof or sufficient medical-opinion testimony that the April 12, 2009 incident caused Kelley's degenerative left-knee condition to become symptomatic. In addition, there was Dr. Hronas' opinion, stated to a reasonable degree of medical certainty, that x-rays taken immediately after the April 12, 2009 incident did not show that the condition of Kelley's knee was any worse or different than it had been two years before, and that there was no evidence in the films to show that an acute injury had occurred. On the other hand, Dr. Rhomberg, Kelley's treating physician, was not able to say within a reasonable degree of medical certainty whether the reoccurrence of symptoms was due to Kelley's chronic pre-existing condition or the April 12, 2009 incident. This was relevant evidence that a reasonable mind might accept as adequate to support a conclusion that Kelley failed to meet his burden of proof for a compensable injury.

We note that Kelley's testimony concerning his symptoms, the immediate temporal connection between the April 12, 2009 incident and the emergence of those symptoms, and the absence of any symptoms for the preceding two years could also lead a reasonable person to conclude that the April 12, 2009 incident did have an aggravating effect on Kelley's pre-existing knee condition. However, objective medical findings to that effect would still be required to prove a compensable injury, and no such findings were offered in this case. In contrast, Dr. Hronas' opinion that there was no evidence of a new injury or an aggravation was stated to a reasonable degree of medical certainty. Under these circumstances, there is no ground for reversal. Because the Commission's decision was supported by substantial evidence, we must affirm.

|₉Affirmed.

WYNNE and ABRAMSON, JJ., agree.

---

16. *Ford v. Chemipulp Process, Inc.*, 63 Ark. App. 260, 977 S.W.2d 5 (1998); Ark.Code Ann. § 11–9–102.

17. *Smith–Blair, Inc. v. Jones*, 77 Ark.App. 273, 72 S.W.3d 560 (2002).

18. *Id.* (citing *Arnold v. Tyson Foods, Inc.*, 64 Ark.App. 245, 983 S.W.2d 444 (1998)).